IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MANKE LUMBER CO., et al. (MT. ADAMS VENEER CO.), | ) | |
| Plaintiffs, | ) | Consolidated under lead case No. 33-85C (No. 91-984C) (Judge Bruggink) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
IN MT. ADAMS VENEER CO. v. UNITED STATES, NO. 91-984C

Pursuant to Rule 56(a), we respectfully request that the Court enter summary judgment in favor of the United States on its counterclaim in this case and dismiss Mt. Adams Veneer Company's complaint because no genuine issue as to any material fact exists and the United States is entitled to judgment as a matter of law. In support of this motion, we rely upon the pleadings, our accompanying proposed findings of uncontroverted fact, the Declaration of Christine Anderson, the documents reproduced in our appendix, and the following memorandum of law.

## DEFENDANT'S MEMORANDUM OF LAW

### Nature Of The Case

Plaintiff, Mt. Adams Veneer Company ("Mt. Adams"), challenges a contracting officer's final decision assessing damages against it in the amount of $3,789,615 as a result of its failure to perform the Lynx Timber Sale contract. The United States counterclaims for the damages due under the terms of the contract.

## Statement Of The Facts

A statement of the relevant facts is set forth in our accompanying proposed findings of uncontroverted fact.

## Argument

### I. Summary Judgment Is Appropriate

Summary judgment is appropriate where, as here, no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Summary judgment is properly regarded not as a disfavored procedural shortcut, but as "a salutary method of disposition 'designed to secure the just, speedy, and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

A "material" fact is one which "might affect the outcome of the suit under the governing law" and a dispute as to a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; Sweats Fashions, 833 F.2d at 1562. Moreover, as the Federal Circuit emphasized in Sweats Fashions, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "'the burden on the moving party may be discharged by 'showing' – that is, pointing out to the [court] – that there is an absence of evidence to support the non-moving party's case.'" Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325).

In this case, summary judgment in favor of the United States is appropriate because there is no dispute over any fact which could affect the outcome of the case under the governing law, and the United States is entitled to a judgment as a matter of law.

II. The United States Is Entitled To Damages In The Amount Of $3,789,615 Under The Agreed-Upon Terms Of The Contract

As demonstrated in our proposed findings, Mt. Adams breached the Lynx Timber Sale contract by failing to cut, remove, and pay for all of the timber included in the Sale by the contract termination date. DPFUF ¶¶ 5-7.[1] After the termination of the contract and an environmental analysis of the Sale Area, the Forest Service decided not to resell the remaining timber. DPFUF ¶ 8.

Standard Provision B9.4 of the Lynx contract sets forth the methodology for determining the damages due the United States in the event of a purchaser's default, whether the Forest Service resells or chooses not to resell the uncut timber. Standard Provision B9.4 provides in pertinent part:

> B9.4 Failure to Cut. In the event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of the Sale Area by Termination Date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

[1] "DPFUF ¶ ___" refers to the cited paragraph(s) in our accompanying proposed findings of uncontroverted fact. Our proposed findings contain citations to documentary evidence reproduced in our appendix and to the testimony of Christine Anderson set forth in a Declaration filed with our motion. Ms. Anderson is a senior Forest Service official and contracting officer in the Forest Service's Pacific Northwest Region. She testified in the earlier Capital Development (No. 750-87C) and Seaboard Lumber (No. 370-88C) trials. We are filing electronically, as separate documents, Ms. Anderson's Declaration and our appendix.

> Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which the Current Contract Value[,] plus the cost of resale, less any effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. *If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.*

Standard Provision B9.4, D. App. 25 (emphasis added).

The Federal Circuit has repeatedly recognized that the United States is entitled to damages calculated in the manner prescribed by Standard Provision B9.4 when the Forest Service chooses not to resell the remaining timber included in a defaulted sale. Hoskins Lumber Co. v. United States, 89 F.3d 816, 817 (Fed. Cir. 1996) (holding Government entitled to damages under the formula set forth in the "no-resale" clause of B9.4); Madigan v. Hobin Lumber Co., 986 F.2d 1401, 1405 (Fed. Cir. 1993) ("The agreed-upon contract term, i.e., that the government is entitled to recover damages in the event there is no resale for whatever reason, including that it chooses not to resell the timber, must be given effect.").[2]

---

[2] The only exception to this rule, not relevant here, is Louisiana-Pacific Corp. v. United States, 227 Ct. Cl. 756 (1981). Louisiana-Pacific, like this case, arose out of a defaulted Forest Service timber sale contract. The contract required the purchaser to cut, remove, and pay for an estimated 7,075 MBF within a specified time period. Before the time for performance had expired, the Forest Service decided that it did not want to resell 5,705 MBF of the original estimated volume either to Louisiana-Pacific or to anyone else. Thus, the Forest Service offered to Louisiana-Pacific a contract modification that would exclude 5,705 MBF from the sale and extend by one-year the period for harvesting the remaining 1,370 MBF. Louisiana-Pacific did not agree to the modification. The contract ultimately expired uncompleted and the Forest Service sought damages (under a provision similar to B9.4) equal to the difference between the contract value of the entire 7,705 MBF and its appraised value at the time of termination. Louisiana-Pacific sought review of the Government's claim in the Court of Claims. Both parties moved for summary judgment. The Court of Claims concluded that neither party was entitled to summary judgment, but stated that "[t]he one issue we do decide at this time relates to the amount of uncut timber for which the [Forest Service] should be permitted to claim damages . . .
(continued...)

Further, the Federal Circuit has made clear that "the *only* question" in such a case is "whether the government complied with its standard appraisal method" in determining the value of the remaining timber at the time of contract termination. Hoskins Lumber, 89 F.3d at 817 (emphasis in original). In explaining this, the Court of Appeals observed that a defaulting purchaser is:

> emphatically *not* entitled to a 'fair' appraisal, an 'accurate' appraisal, a 'reasonable' appraisal, or any manner of appraisal other than the one indicated in section B9.4. Under section B9.4, compliance with the standard appraisal method is the sole measure of its accuracy and reliability.

89 F.3d at 817 (emphasis in original). In Hoskins, the Federal Circuit reversed the Court of Federal Claims post-trial decision dismissing the United States' counterclaim, and remanded

---

[2](...continued)
on its counterclaim[.]" 277 Ct. Cl. at 758. On that issue, the Court held that "recovery on the counterclaim . . . cannot exceed damages for failure to cut 1,370 MBF." Id. The Federal Circuit has distinguished and limited sharply the Louisiana-Pacific decision, observing that its holding is an exception to the general rule that agreed-upon contract terms must be enforced. Hobin Lumber, 986 F.2d at 1404. In this regard, the Federal Circuit stated:

> the exception created by *Louisiana-Pacific* must be narrowly construed to apply only in those cases where similar facts occurred. That is, *Louisiana-Pacific* should only apply in those cases where the government decides during the period of contract performance that it does not want all of the contract timber cut, where the government attempts to modify the contract during the period of contract performance to limit the timber the contractor is otherwise required to cut but the contractor refuses, and where the government subsequently seeks to recover damages on that precise timber.

986 F.2d at 1405. Further, in attempting to explain the Louisiana-Pacific ruling, the Federal Circuit noted that "the government's attempted modification of the contract during the period of contract performance is a plausible justification for creating an exception to the general rule because it suggests that the [Court of Claims] applied some form of estoppel against the government." 986 F.2d at 1405 n.3. Louisiana-Pacific is inapplicable here because the facts in this case involving Mt. Adams' Lynx Timber Sale bear no similarity to those in Louisian-Pacific.

the case to the trial court with instructions to enter a judgment in favor of the Government in the precise amount due under B9.4 because the Government had established that the Forest Service had "conducted the appraisal according to its standard method." Id.; see also Hobin Lumber, 986 F.2d at 1406 (reversing AGBCA ruling that Louisiana-Pacific barred recovery where timber was not resold, and remanding with directions to enter summary judgment in favor of the United States).

As demonstrated in our proposed findings and in Ms. Anderson's Declaration, the Forest Service, after the termination of Mt. Adams' Lynx contract, did appraise the value of the remaining timber using the standard Forest Service method in effect at the time of termination. DPFUF ¶¶ 10-14; Anderson Decl. ¶¶ 10-14. The contracting officer then determined the damages due using the formula set forth in the "no-resale" clause of Standard Provision B9.4. DPFUF ¶ 17. Ms. Anderson reviewed the contracting officer's determination of the damages due and attests that his determination is correct and in accordance with the methodology set forth in Standard Provision B9.4. Hence, unless Mt. Adams is able to produce some evidence that the Forest Service's appraisal was not made in accordance with the agency's standard method in use at the time of termination (and we are aware of no such evidence), summary judgment in favor of the United States is appropriate.

Conclusion

For the foregoing reasons, the United States respectfully requests that the Court grant its motion for summary judgment, and enter an order directing the entry of a judgment awarding the United States $3,789,615, plus interest, on its counterclaim, and dismissing plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John W. Showalter by s/Richard P. Nockett
JOHN W. SHOWALTER
Assistant Director

s/Richard P. Nockett
RICHARD P. NOCKETT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W. (8th Floor)
Washington, D.C. 20530
Tele: (202) 307-1134
Fax: (202) 307-0494

Attorneys for Defendant

Dated: September 12, 2003

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 12th day of September 2003 I caused copies of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN MT. ADAMS VENEER CO. v. UNITED STATES, No. 91-984C," and the accompanying "APPENDIX TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT," and the "DECLARATION OF CHRISTINE ANDERSON" to be served upon the following individuals by United States mail (first-class, postage prepaid):

WILLIAM F. LENIHAN, Esq.
Schwabe, Williamson & Wyatt
1420 Fifth Avenue, Suite 3010
Seattle, Washington 98101

ANDREW R. GALA, Esq.
Schwabe, Williamson & Wyatt
1420 Fifth Avenue, Suite 3010
Seattle, Washington 98101

______________________________

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MANKE LUMBER CO., et al. (MT. ADAMS VENEER CO.), Plaintiffs, | ) | Consolidated under lead case No. 33-85C (No. 91-984C) (Judge Bruggink) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

DECLARATION OF CHRISTINE ANDERSON
IN MT. ADAMS VENEER CO. v. UNITED STATES, NO. 91-984C

I, Christine Anderson, am a Contract Administration Forester in the Forest Service Regional Headquarters Office for the Pacific Northwest Region. I am also a contracting officer on the Olympic National Forest and have been since 1985, as well as a contracting officer on the Mt. Baker-Snoqualmie National Forest since 1993.

I have reviewed the official Forest Service contract files and agency records pertaining to the Lynx Timber Sale which is the subject of this case. In making this declaration, I have relied upon the information contained in the Forest Service's records concerning the Lynx Sale, as well as my knowledge and 29 years of experience as a Forest Service contracting officer, appraiser, and pre-sale administrator.

1. On August 27, 1979, the Forest Service, United States Department of Agriculture ("Forest Service"), advertised for sale certain timber located in the Gifford Pinchot National

Forest in Washington State. The sale was named the "Lynx Sale." D. App. 1.[1]

2. On the same date, the Forest Service issued a "Timber Sale Prospectus" for the Lynx Sale, containing information for prospective bidders concerning the timber and the terms and conditions of its sale. D. App. 2-8. As stated in the prospectus, the Sale included fourteen clearcutting units totaling approximately 536 acres, plus 38 acres of right-of-way to be cleared for the construction of specified roads. D. App. 2-3. The total available purchaser road credits equaled $933,641. D. App. 5. According to the volume estimate set forth in the prospectus (and in the timber sale contract), the Sale included an estimated 37,500 MBF[2] of timber, plus an additional volume of pulp and cull material located throughout the 574-acre sale area that was subject to per-acre pricing. D. App. 3, 16. The prospectus stated that the contract termination date was to be March 31, 1987. D. App. 4. The lengthy performance period – more than seven years from the anticipated contract award date to the termination date – was due, in part, to the large volume of timber included in the Sale.

3. The total advertised value of the Lynx Sale, established by a Forest Service appraisal, was $6,575,986.87. D. App. 9.

4. The Forest Service conducted bidding for the Sale on September 27, 1979. Mt. Adams Veneer Company ("Mt. Adams") was the high bidder among twelve with a total bid value of $21,820,375. D. App. 10. Mt. Adams' total bid value was more than three times the advertised value of the Sale.

---

[1] "D. App. __" refers to the cited page(s) in the appendix accompanying our summary judgment motion.

[2] "MBF" is a unit of measurement meaning "thousand board feet." Thus, 1 MBF equals one thousand board feet of timber.

5. By letter of October 24, 1979, the Forest Service accepted Mt. Adams' bid and awarded the company the Lynx Timber Sale Contract. D. App. 11-13. Under the terms of the contract, Mt. Adams was obligated to cut, remove, and pay for all of the timber included in the Sale by the contract termination date of March 31, 1987. D. App. 14-17.

6. On November 18, 1981, the parties executed an "Agreement to Extend Timber Sale Contract" which extended the contract termination date by twenty-seven months, until June 30, 1989. D. App. 18.

7. During the performance period, Mt. Adams harvested the right-of-way timber, completed all of the specified roads and transferred its resulting purchaser credits to other sales, but failed to cut, remove and pay for any of the timber in the fourteen clearcutting units included in the Sale. The contract terminated uncompleted on June 30, 1989. At the time, an estimated volume of 38,300 MBF, including per-acre material, remained in the sale area. D. App. 26.

8. After the termination of the contract and an environmental analysis of the Sale Area, the Forest Service decided not to resell the remaining timber included in Mt. Adams' defaulted Lynx Sale. The agency's decision was based upon environmental concerns, primarily the potential adverse impacts of further timber harvesting on water quality and soil productivity in the area. The Forest Service's decision not to resell was memorialized in a September 21, 1990 document entitled "ANALYSIS SUMMARY AND DECISION NOT TO RESELL D-LYNX TIMBER SALE." D. App. 19-24. The term "D-LYNX" means defaulted Lynx.

9. Standard Provision B9.4 of the Lynx Timber Sale contract sets forth the methodology for determining the damages, if any, due the United States in the event of a purchaser's default, whether the Forest Service resells or chooses not to resell the uncut timber. Standard Provision

B9.4 provides in pertinent part:

> B9.4 Failure to Cut. In the event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of the Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which the Current Contract Value[,] plus the cost of resale, less any effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. *If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.*

D. App. 25 (emphasis added).

10. Following the termination of Mt. Adams' Lynx contract, the Forest Service appraised the value of the remaining timber as required by Standard Provision B9.4. The appraised value of the remaining volume, as set forth in the "APPRAISAL SUMMARY" (D. App. 26), equaled $10,413,380.96, before an upward adjustment was applied to reflect an estimated bid premium. D. App. 26. The bid premium on a timber sale is the difference between the Forest Service's appraised rates and the actual bid rates, on a per-MBF basis.

11. At the time the appraisal for Mt. Adams' defaulted Lynx Sale was prepared, the Forest Service's practice was to add an estimated bid premium to the appraised rates when the uncut volume in a defaulted sale was not being resold. This adjustment was made because the Forest Service recognized that the rates established by its appraisal process generally tended to be lower than actual sales prices in the timber market. The addition of an estimated bid premium to the appraised rates increased the total estimated value of the remaining timber and, thus, reduced

the amount of damages which would otherwise be due from the defaulting purchaser under the methodology for determining damages set forth in Standard Provision B9.4.

12. In determining the value of the remaining timber included in Mt. Adams' defaulted Lynx Sale, the contracting officer, in consultation with district sale administration personnel, reviewed other timber sales within the Randle Ranger District of the Gifford Pinchot National Forest (i.e., the same Ranger District in which the Lynx Timber Sale was located). Using price data from four such sales, the contracting officer calculated weighted average bid premiums to be added to the appraised rates per MBF for two species or categories of timber included in Mt. Adams' defaulted Lynx Sale: Douglas Fir ("DF"); and Hemlock and Other Coniferous Species ("H&O"). The DF and H&O represented over 90 percent of the estimated volume of uncut timber on the Lynx Sale. D. App. 26. The weighted average bid premium for DF equaled $215.27 per MBF, and the weighted average bid premium for H&O equaled $173.71 per MBF. D. App. 30-31. No estimated bid premiums were added to the appraised rates for the Western Red Cedar and the per-acre material because they were fixed-rate species and were not subject to bidding above the appraised rates.

13. Adding these weighted average bid premiums to the appraised rates set forth in the appraisal summary (D. App. 26), the contracting officer determined the value of the remaining timber on the Lynx Sale at the time of termination as follows:

| Species | Volume | Appraised Rates | Bid Premium | New Rate | Total |
|---|---|---|---|---|---|
| DF | 19,100 | $426.35 | $215.27 | $641.62 | $12,254,942 |
| H&O | 15,800 | $121.16 | $173.71 | $294.87 | 4,658.946 |
| C[3] | 1,400 | $171.12 | – | $171.12 | 239,568 |
| PAM[4] | 2,000 | $58.10 | – | $58.10 | 116,200 |
| | | | | | $17,269,656 |

D. App. 32.

14. This appraisal of the value of the remaining timber in Mt. Adams' defaulted Lynx Sale, including the determination and addition of the weighted average bid premiums, was performed in accordance with the standard Forest Service method in use at the time.

15. To determine whether damages were due the United States under Standard Provision B9.4, the contracting officer also calculated the Current Contract Value[5] of the remaining timber, that is, the value of the remaining volume of timber at the rates Mt. Adams' was obligated to pay under the terms of its contract. The contracting officer calculated the Current Contract Value as follows:

| Species | Volume | Contract Rates | Total |
|---|---|---|---|
| DF | 19,100 | $678.00 | $12,949,800 |
| H&O | 15,800 | $500.00 | 7,900,000 |
| C | 1,400 | $220.35 | 308,490 |
| PAM | 536 acres | $1.83 | 981 |
| | | | $21,159,271 |

D. App. 32.

[3] "C" refers to the Western Red Cedar included in the Sale.

[4] "PAM" refers to per-acre material.

[5] "Current Contract Value" is the sum of the products of the current contract rates and the estimated remaining timber volumes by species. The contract rates at the time the Lynx Sale expired uncompleted were Mt. Adams' bid rates. See D. App. 17 (Contract, section A5b).

16. Thus, under the damages formula set forth in Standard Provision B9.4, the damages due the United States are as follows:

| | |
|---|---|
| Current Contract Value: | $21,159,271.00 |
| Less Purchaser Credit: | 0.00 |
| Subtotal: | 21,159,271.00 |
| Less Appraised Value: | - 17,269,656.00 |
| Damages: | 3,889,615.00 |
| Less Cash Deposit: | - 100,000.00 |
| Net Due: | $3,789,615.00 |

17. Accordingly, on June 22, 1990, the contracting officer issued, and sent to Mt. Adams by certified mail, his final decision assessing damages against Mt. Adams in the amount of $3,789,615. D. App. 27-29. The contracting officer enclosed, with his decision letter, his bid premium calculations (D. App. 30-31), damage calculations (D. App. 32), and a bill for collection. D. App. 33. Payment in the amount of $3,789,615 was due by July 22, 1990. D. App. 33. The contracting officer's determination of the damages due the United States is correct and in accordance with Standard Provision B9.4 of the Lynx Timber Sale Contract.

18. Thereafter, on March 5, 1991, Mt. Adams commenced this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., challenging the contracting officer's final decision.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at Olympia, Washington, on this 11th day of September 2003.

Christine Anderson
CHRISTINE ANDERSON