IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MANKE LUMBER CO., et al. (MT. ADAMS VENEER CO.), | ) | |
| Plaintiffs, | ) | Consolidated under lead case No. 33-85C (No. 91-984C) (Judge Bruggink) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT
IN MT. ADAMS VENEER CO. v. UNITED STATES, NO. 91-984C

Pursuant to Rule 56(h)(1), the United States respectfully submits the following proposed findings of uncontroverted fact in support of its accompanying motion for summary judgment.

1. On August 27, 1979, the Forest Service, United States Department of Agriculture ("Forest Service"), advertised for sale certain timber located in the Gifford Pinchot National Forest in Washington State. The sale was named the "Lynx Sale." Declaration of Christine Anderson ("Anderson Decl.") ¶ 1; D. App. 1.[1]

2. On the same date, the Forest Service issued a "Timber Sale Prospectus" for the Lynx Sale, containing information for prospective bidders concerning the timber and the terms and conditions of its sale. D. App. 2-8. As stated in the prospectus, the Sale included fourteen clearcutting units totaling approximately 536 acres, plus 38 acres of right-of-way to be cleared for the construction of specified roads. D. App. 2-3. The total available purchaser road credits

[1] "D. App. __" refers to the cited page(s) in the appendix accompanying our summary judgment motion.

equaled $933,641. D. App. 5. According to the volume estimate set forth in the prospectus (and in the timber sale contract), the Sale included an estimated 37,500 MBF[2] of timber, plus an additional volume of pulp and cull material located throughout the 574-acre sale area that was subject to per-acre pricing. D. App. 3, 16. The prospectus stated that the contract termination date was to be March 31, 1987. D. App. 4. The lengthy performance period – more than seven years from the anticipated contract award date to the termination date – was due, in part, to the large volume of timber included in the Sale. Anderson Decl. ¶ 2.

3. The total advertised value of the Lynx Sale, established by a Forest Service appraisal, was $6,575,986.87. Anderson Decl. ¶ 3; D. App. 9.

4. The Forest Service conducted bidding for the Sale on September 27, 1979. Mt. Adams Veneer Company ("Mt. Adams") was the high bidder among twelve with a total bid value of $21,820,375. Anderson Decl. ¶ 4; D. App. 10. Mt. Adams' total bid value was more than three times the advertised value of the Sale.

5. By letter of October 24, 1979, the Forest Service accepted Mt. Adams' bid and awarded the company the Lynx Timber Sale Contract. D. App. 11-13. Under the terms of the contract, Mt. Adams was obligated to cut, remove, and pay for all of the timber included in the Sale by the contract termination date of March 31, 1987. Anderson Decl. ¶ 5; D. App. 14-17.

6. On November 18, 1981, the parties executed an "Agreement to Extend Timber Sale Contract" which extended the contract termination date by twenty-seven months, until June 30, 1989. Anderson Decl. ¶ 6; D. App. 18.

---

[2] "MBF" is a unit of measurement meaning "thousand board feet." Thus, 1 MBF equals one thousand board feet of timber.

7. During the performance period, Mt. Adams harvested the right-of-way timber, completed all of the specified roads and transferred its resulting purchaser credits to other sales, but failed to cut, remove and pay for any of the timber in the fourteen clearcutting units included in the Sale. The contract terminated uncompleted on June 30, 1989. At the time, an estimated volume of 38,300 MBF, including per-acre material, remained in the sale area. Anderson Decl. ¶ 7; D. App. 26.

8. After the termination of the contract and an environmental analysis of the Sale Area, the Forest Service decided not to resell the remaining timber included in Mt. Adams' defaulted Lynx Sale. The agency's decision was based upon environmental concerns, primarily the potential adverse impacts of further timber harvesting on water quality and soil productivity in the area. The Forest Service's decision not to resell was memorialized in a September 21, 1990 document entitled "ANALYSIS SUMMARY AND DECISION NOT TO RESELL D-LYNX TIMBER SALE." Anderson Decl. ¶ 8; D. App. 19-24. The term "D-LYNX" means defaulted Lynx. Anderson Decl. ¶ 8.

9. Standard Provision B9.4 of the Lynx Timber Sale contract sets forth the methodology for determining the damages, if any, due the United States in the event of a purchaser's default, whether the Forest Service resells or chooses not to resell the uncut timber. Standard Provision B9.4 provides in pertinent part:

> B9.4 Failure to Cut. In the event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of the Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

> Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which the Current Contract Value[,] plus the cost of resale, less any effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. *If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.*

Anderson Decl. ¶ 9; D. App. 25 (emphasis added).

10. Following the termination of Mt. Adams' Lynx contract, the Forest Service appraised the value of the remaining timber as required by Standard Provision B9.4. The appraised value of the remaining volume, as set forth in the "APPRAISAL SUMMARY" (D. App. 26), equaled $10,413,380.96, before an upward adjustment was applied to reflect an estimated bid premium. D. App. 26. The bid premium on a timber sale is the difference between the Forest Service's appraised rates and the actual bid rates, on a per-MBF basis. Anderson Decl. ¶ 10.

11. At the time the appraisal for Mt. Adams' defaulted Lynx Sale was prepared, the Forest Service's practice was to add an estimated bid premium to the appraised rates when the uncut volume in a defaulted sale was not being resold. This adjustment was made because the Forest Service recognized that the rates established by its appraisal process generally tended to be lower than actual sales prices in the timber market. The addition of an estimated bid premium to the appraised rates increased the total estimated value of the remaining timber and, thus, reduced the amount of damages which would otherwise be due from the defaulting purchaser under the methodology for determining damages set forth in Standard Provision B9.4. Anderson Decl. ¶ 11.

12. In determining the value of the remaining timber included in Mt. Adams' defaulted Lynx Sale, the contracting officer, in consultation with district sale administration personnel, reviewed other timber sales within the Randle Ranger District of the Gifford Pinchot National Forest (i.e., the same Ranger District in which the Lynx Timber Sale was located). Using price data from four such sales, the contracting officer calculated weighted average bid premiums to be added to the appraised rates per MBF for two species or categories of timber included in Mt. Adams' defaulted Lynx Sale: Douglas Fir ("DF"); and Hemlock and Other Coniferous Species ("H&O"). The DF and H&O represented over 90 percent of the estimated volume of uncut timber on the Lynx Sale. D. App. 26. The weighted average bid premium for DF equaled $215.27 per MBF, and the weighted average bid premium for H&O equaled $173.71 per MBF. Anderson Decl. ¶ 12; D. App. 30-31. No estimated bid premiums were added to the appraised rates for the Western Red Cedar and the per-acre material because they were fixed-rate species and were not subject to bidding above the appraised rates. Anderson Decl. ¶ 12.

13. Adding these weighted average bid premiums to the appraised rates set forth in the appraisal summary (D. App. 26), the contracting officer determined the value of the remaining timber on the Lynx Sale at the time of termination as follows:

| Species | Volume | Appraised Rates | Bid Premium | New Rate | Total |
|---|---|---|---|---|---|
| DF | 19,100 | $426.35 | $215.27 | $641.62 | $12,254,942 |
| H&O | 15,800 | $121.16 | $173.71 | $294.87 | 4,658.946 |
| C[3] | 1,400 | $171.12 | – | $171.12 | 239,568 |
| PAM[4] | 2,000 | $58.10 | – | $58.10 | 116,200 |
| | | | | | $17,269,656 |

[3] "C" refers to the Western Red Cedar included in the Sale.

[4] "PAM" refers to per-acre material.

Anderson Decl. ¶ 13; D. App. 32.

14. This appraisal of the value of the remaining timber in Mt. Adams' defaulted Lynx Sale, including the determination and addition of the weighted average bid premiums, was performed in accordance with the standard Forest Service method in use at the time. Anderson Decl. ¶ 14.

15. To determine whether damages were due the United States under Standard Provision B9.4, the contracting officer also calculated the Current Contract Value[5] of the remaining timber, that is, the value of the remaining volume of timber at the rates Mt. Adams' was obligated to pay under the terms of its contract. The contracting officer calculated the Current Contract Value as follows:

| Species | Volume | Contract Rates | Total |
|---|---|---|---|
| DF | 19,100 | $678.00 | $12,949,800 |
| H&O | 15,800 | $500.00 | 7,900,000 |
| C | 1,400 | $220.35 | 308,490 |
| PAM | 536 acres | $1.83 | 981 |
| | | | $21,159,271 |

Anderson Decl. ¶ 15; D. App. 32.

16. Thus, under the damages formula set forth in Standard Provision B9.4, the damages due the United States are as follows:

| | |
|---|---|
| Current Contract Value: | $21,159,271.00 |
| Less Purchaser Credit: | 0.00 |
| Subtotal: | 21,159,271.00 |
| Less Appraised Value: | - 17,269,656.00 |
| Damages: | 3,889,615.00 |

[5] "Current Contract Value" is the sum of the products of the current contract rates and the estimated remaining timber volumes by species. The contract rates at the time the Lynx Sale expired uncompleted were Mt. Adams' bid rates. See D. App. 17 (Contract, section A5b).

| | |
|---|---|
| Less Cash Deposit: | - 100,000.00 |
| Net Due: | $3,789,615.00 |

Anderson Decl. ¶ 16.

17. Accordingly, on June 22, 1990, the contracting officer issued, and sent to Mt. Adams by certified mail, his final decision assessing damages against Mt. Adams in the amount of $3,789,615. D. App. 27-29. The contracting officer enclosed, with his decision letter, his bid premium calculations (D. App. 30-31), damage calculations (D. App. 32), and a bill for collection. D. App. 33. Payment in the amount of $3,789,615 was due by July 22, 1990. D. App. 33. The contracting officer's determination of the damages due the United States is correct and in accordance with Standard Provision B9.4 of the Lynx Timber Sale Contract. Anderson Decl. 17.

18. Thereafter, on March 5, 1991, Mt. Adams commenced this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., challenging the contracting officer's final decision.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John W. Showalter by s/Richard P. Nockett
JOHN W. SHOWALTER
Assistant Director

s/Richard P. Nockett
RICHARD P. NOCKETT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W. (8th Floor)
Washington, D.C. 20530
Tele: (202) 307-1134
Fax: (202) 307-0494

Attorneys for Defendant

Dated: September 12, 2003

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this __12th__ day of September 2003 I caused copies of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN MT. ADAMS VENEER CO. v. UNITED STATES, No. 91-984C" to be served upon the following individuals by United States mail (first-class, postage prepaid):

WILLIAM F. LENIHAN, Esq.
Schwabe, Williamson & Wyatt
1420 Fifth Avenue, Suite 3010
Seattle, Washington 98101

ANDREW R. GALA, Esq.
Schwabe, Williamson & Wyatt
1420 Fifth Avenue, Suite 3010
Seattle, Washington 98101

______________________________