UN[ITED S]TATES DEPARTMENT OF AGRICULT[URE]
FOREST SERVICE
GIFFORD PINCHOT NATIONAL FOREST
500 West 12th Street
Vancouver, Washington 98660

REPLY TO: 2450 Sale Contracts and Permits October 24, 1979

SUBJECT: Lynx Sale, #06785-1, Randle R.D.

TO: Mt. Adams Veneer Company
P.O. Box 758
Randle, WA 98377

Your bid for timber on the Lynx Timber Sale was accepted by the Forest Supervisor on October 24, 1979. You are hereby awarded the Sale. Number 06785-1 has been assigned to this contract.

To fully complete negotiations for this Sale the following documents are enclosed for your attention and action:

1. Three copies of the Timber Sale Contract. The original and duplicate must be executed by the person or persons who are authorized to sign for the Company, in accordance with the instructions on the back of contract page 1. The third copy of the contract is for the surety from whom you secure your bond. In accordance with your request we have added Contract Special Provision C4.228, Performance Bond as Security for Felled Timber.

2. Two copies of the Performance Bond. The original copy should be signed by the same person or persons who executed the contract and by the surety's representative. Power of attorney or affidavit by an officer of the bonding company, indicating that the person signing the bond is authorized to sign for the bonding company, must be secured from the surety and the corporate sureties must affix seals to the bond where indicated. The bonding company must be on the current Treasury Department's approved list of acceptable sureties. The duplicate copy of the bond is for the surety.

3. Two copies of Application for Addition of Timber Sale Contract to Blanket Payment Bond. If you desire this sale added to your blanket bond, please have this application executed and return both copies.

11

4. Two copies of Timber Purchaser's Request for Work for sale area erosion control. If you desire the Forest Service to perform the contractual erosion control work as listed on the agreement, please sign and return both copies.

When no private timber has or will be exported, directly or indirectly by you, or your affiliates, from the tributary area to be determined for this Sale during CY 1971, 1972 and 1973, and in any subsequent calendar year, a signed certification to that effect may permit the Forest Service to waive the information required by item (b) of the "Certification of Nonsubstitution of Timber Purchased." Your request for such a waiver must be accompanied by the information required in item (a) and a signed certificate of nonexport of tributary private timber covering calendar years 1971-1973, and in any subsequent calendar year. Such a waiver will not apply to a changed tributary processing plant or delivery location decided upon after start of operations. Such a waiver also does not relieve you from keeping records for disposition of timber from this Sale as required by the contract.

Standard provision B8.63 Nondiscrimination in Employment is in effect in this contract. Enclosed is notice "Equal Employment Opportunity is the Law" and AD-425a Instructions to Contractors.

The original and duplicate of the contract and the original of the bond, with power of attorney or affidavit, should be returned to this office for approval within 30 days of notice of award unless a written extension of time is granted by the Forest Service. Following approval, copies will be returned to you for your records.

Please note that in accordance with Special Provision C6.3, you shall furnish the Forest Service a written general plan of operation within 60 days after you have executed the contract.

In accordance with Standard Provision B6.1 of contract, the Randle District Ranger is the designated Forest Service representative to receive notices and take action in regard to the performance of this contract, except for road construction.

12

Also, I am hereby designating Bruce Hamre or his successor, as Forest Service Engineering Representative. He is authorized to receive notices in regard to specified road construction, and to take action in regard to specified road construction, including approval of minor road design, minor physical, and minor rock pit changes, and differences in drainage structures. The Engineering Representative is authorized to make these changes as needed to obtain compliance of construction with the road plans and to minimize resource damages.

Please submit in writing to the Ranger the name of your representative. Your representative should make contact with the Ranger prior to starting any operations on this Sale. The Ranger will wish to meet with you to form the logging and fire plans and make arrangements for scaling.

This sale is subject to the new Forest Service extension policy published in the Federal Register dated June 21, 1978, which in part provides that 75 percent of the advertised volume must be cut and removed from the Sale Area to qualify for Contract Term Extension.

GARRETT M. COUGHLAN

FOR: ROBERT D. TOKARCZYK
Forest Supervisor

Enclosures

cc: Randle R.D.
Zone I
Gordon Anderson, Engr.

DTropfenbaum:0096A/124A

13

| U.S. DEPARTMENT OF AGRICULTURE - FOREST SERVICE<br>**TIMBER SALE CONTRACT**<br>(Applicable to Sales to be Scaled After Felling) | | NAME OF PURCHASER<br>MT. ADAMS VENEER CO. | | |
|---|---|---|---|---|
| NATIONAL FOREST<br>Gifford Pinchot | RANGER DISTRICT<br>Randle | REGION<br>Six | CONTRACT NO.<br>06785-1 | |
| SALE NAME<br>LYNX | | SUBREGION<br>Douglas-fir | AWARD DATE<br>10/24/79 | TERMINATION DATE<br>~~03/31/87~~ |

The parties to this contract are The United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, and Mt. Adams Veneer Co., a joint venture [1] consisting of Puget Sound Plywood, Inc., and Publishers Forest Products Co., of a Washington, Randle, Washington 98377 hereinafter called Purchaser.

[2] Forest Service having advertised a sale at which either (1) Purchaser, whose required bid deposit is now held by Forest Service as an initial deposit, was the successful bidder, or (2) no bids were received and Purchaser having subsequently offered at least the minimum advertised price and made an initial deposit in the same amount as the bid deposit specified in the sale advertisement; and the parties hereto desiring to record their agreement; now therefore,

In consideration of the premises and the promises hereinafter contained, unless provided otherwise herein, Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber.

This contract consists of three Divisions: A - Specific Conditions, B - Standard Provisions, and C - Special Provisions, together with Sale Area Map, Drawings and specifications for developments (if any) and such attachments as may be provided for in Division C. Specific Conditions are numbered and apply to the Part, Section, Subsection, or Item of the Standard Provisions, as indicated hereunder. Other conditions of this contract are stated in Division C - Special Provisions.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the award date.

(Name)

(Address)

(Name)

(Address)

(Purchaser)[4]

By: [signature] LEAMON J. BENNETT
VICE-PRESIDENT
(Title)

PUGET SOUND PLYWOOD, INC.
(Business Address)
230 EAST F STREET
TACOMA, WA. 98401

I,[5] MORRIS D. MORTENSEN, certify that I am the CORPORATE Secretary of the corporation named as Purchaser herein; that LEAMON J. BENNETT who signed this contract on behalf of Purchaser, was then VICE PRESIDENT of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

[signature] CORPORATE SEAL[6]

(OVER)
1

* #4 9

2400-6, Page 101 (9/73)

...ing body, and is within the scope of its corporate powers.

By: [signature]
H. N. Moon - Vice President

CORPORATE SEAL[6]

(14)

(OVER)
1

2400-6, Page 101 (9/73)

U.S. DEPARTMENT OF AGRICULTURE - FOREST SERVICE

# TIMBER SALE CONTRACT

(Applicable to Sales to be Scaled After Felling)

NAME OF PURCHASER: MT. ADAMS VENEER CO.

| NATIONAL FOREST | RANGER DISTRICT | REGION | CONTRACT NO. | |
|---|---|---|---|---|
| Gifford Pinchot | Randle | Six | 06785-1 | |
| **SALE NAME** | | **SUBREGION** | **AWARD DATE** | **TERMINATION DATE** |
| LYNX | | Douglas-fir | 10/24/79 | ~~03/31/87~~ |

The parties to this contract are The United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, and Mt. Adams Veneer Co., a joint venture

1 consisting of Puget Sound Plywood, Inc., and Publishers Forest Products Co., of

a Washington, Randle, Washington 98377

hereinafter called Purchaser.

2 Forest Service having advertised a sale at which either (1) Purchaser, whose required bid deposit is now held by Forest Service as an initial deposit, was the successful bidder, or (2) no bids were received and Purchaser having subsequently offered at least the minimum advertised price and made an initial deposit in the same amount as the bid deposit specified in the sale advertisement: and the parties hereto desiring to record their agreement: now therefore,

In consideration of the premises and the promises hereinafter contained, unless provided otherwise herein, Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber.

This contract consists of three Divisions: A - Specific Conditions, B - Standard Provisions, and C - Special Provisions, together with Sale Area Map, Drawings and specifications for developments (if any) and such attachments as may be provided for in Division C. Specific Conditions are numbered and apply to the Part, Section, Subsection, or Item of the Standard Provisions, as indicated hereunder. Other conditions of this contract are stated in Division C - Special Provisions.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the award date.

UNITED STATES OF AMERICA

By ______
For: ROBERT D. TOKARCZYK
Forest Supervisor
(Title)

Two Witnesses:[3]

______ (Name)

______ (Address)

______ (Name)

______ (Address)

MT. ADAMS VENEER CO.
(Purchaser)[4]

By ______
(Title)

PUBLISHERS FOREST PRODUCTS CO. OF WASHINGTON
(Business Address)
[signature]
Raymond M. Luthy - Timberlands Manager

I,[5] H. N. Moon, certify that I am the Vice President ~~Secretary~~ of the corporation named as Purchaser herein; that Raymond M. Luthy who signed this contract on behalf of Purchaser, was then Timberlands Manager of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

By: [signature]
H. N. Moon - Vice President

CORPORATE SEAL[6]

(OVER)

15

The following conditions apply to the indicated portions of Division B - Standard Provisions issued September, 1973 (Month-Year)

**A1 – Location and Area,** applicable to B1.1

This Sale Area of 1,300 acres more or less is located in:
Sections 2, 10, 14, 22 and 28, T. 13 N., R. 7 E., W.M., Surveyed, Lewis County, Washington.

**A2 – Volume Estimate and Utilization Standards,** applicable to B2.1, B2.2, B2.4 and B6.4

| SPECIES AND PRODUCT | ESTIMATED QUANTITY AND UNIT OF MEASURE | MINIMUM TREE SPECIFICATIONS INCLUDE ONE MINIMUM PIECE | MINIMUM PIECE SPECIFICATIONS | | |
|---|---|---|---|---|---|
| | | DIAMETER BREAST HIGH (d.b.h.) Inches | LENGTH Feet | DIAMETER INSIDE BARK AT SMALL END Inches | NET SCALE IN % OF GROSS SCALE |
| 1/Pieces Subject to Per M Pricing: | M Board Feet | | | | |
| Douglas-fir | 19,600 | 9.0 | 8 | 6 | 33 1/3 |
| Western redcedar | 1,500 | 9.0 | 8 | 6 | 33 1/3 |
| Western hemlock and Other Coniferous Species | 16,400 | 9.0 | 8 | 6 | 33 1/3 |
| Material Subject to Per-Acre Pricing: (That which does not meet the above specifications) | Acres | | | | |
| Utility (Pulp) and Special Cull | 574 | 9.0 | 12 | 6 | NA |
| 1/A piece is one or more A13 products (one or more Scaling segments) containing at least 20 board feet, net scale. | | | | | |
| TOTAL | 37,500 MBF 574 Acres | | | | |

**A3 – Timber Designations,** applicable to B2.3; acres are approximate:

| | Number | Acres |
|---|---|---|
| Clearcutting Units (B2.31) | 14 | 536 |
| Specified Road Clearing (B2.32) | 1 | 38 (1,840 MBF) |
| Overstory-Removal Units (B2.33) | -- | -- |
| Understory-Removal Units (B2.34) | -- | -- |
| Individual Trees (B2.35) | | -- |
| Incompletely-Marked Timber (B2.36) | | -- |

**A4 – Dead Trees Required to be Felled,** applicable to B2.12, B2.3 and B6.4

**Size Requirements:** 15 feet high and 12 inches d.b.h.

Dead trees required to be cut as part of road construction will be described in Section 201.

**Number Limitations:** Applicable only if Sale Area Map indicates there are subdivisions where timber is to be designated after date of sale advertisement. In addition to dead trees felled within Clearcutting Units, construction clearings and other authorized development clearings, no more than 250 dead trees must be felled within subdivisions, or those portions thereof, where timber is designated after date of sale advertisement. Number limitation does not apply ~~to subdivisions~~, or portions thereof, designated at time of sale advertisement.

16

**A5 – Timber Payment Rates,** applicable to B3.1 and B4.0

**A5a – For Species and Products to be Paid for at Rates Escalated under B3.2**

| SPECIES AND PRODUCT | UNIT OF MEASURE | RATES PER UNIT OF MEASURE | | | | | BASE INDEX |
|---|---|---|---|---|---|---|---|
| | | BASE $ | ADVERTISED $ | BID PREMIUM $ | BID (Tentative) $ | REQUIRED DEPOSITS SLASH DISPOSAL $ | |
| None | | | | | | | |

**A5b – For Species and Products to be Paid for at Flat Rates**

| SPECIES AND PRODUCT | UNIT OF MEASURE | RATES PER UNIT OF MEASURE | | | | |
|---|---|---|---|---|---|---|
| | | BASE $ | ADVERTISED $ | BID PREMIUM $ | BID (Flat) $ | REQUIRED DEPOSITS SLASH DISPOSAL $ |
| 1/Pieces Subject to Per M Pricing: | | | | | | |
| Douglas-fir | MBF | 11.78 | 213.85 | 464.15 | 678.00 | 5.16 |
| Western redcedar | MBF | 10.78 | 220.35 | -- | 220.35 | 5.16 |
| Western hemlock and Other Coniferous Species | MBF | 10.78 | 125.18 | 374.82 | 500.00 | 5.16 |
| Material Subject to Per-Acre Pricing: | | | | | | |
| Utility (Pulp) and Special Cull | Acre | 1.83 | 1.83 | -- | 1.83 | None |

1/A piece is one or more A13 products (one or more Scaling segments) containing at least 20 board feet, net scale.

For purposes of convenience in collection and bookkeeping, Bid Rates stated in A5 include payment of deposits for sale area betterment required pursuant to 16 U.S.C. 576b. Such deposits are not included as Required Deposits defined hereunder.

17

United States Department of Agriculture
Forest Service

Contract No. 06785-1

LYNX

2450 Sale Contracts and Permits

# AGREEMENT TO EXTEND ~~AND MODIFY~~ TIMBER SALE CONTRACT

1. It is mutually agreed, that the contract period of the above designated timber sale contract, signed by Mt. Adams Veneer Co., P. O. Box 758, of Randle, Washington 98377, hereinafter called the purchaser and by J. Owens for Robert D. Tokarczyk, Forest Supervisor (Name) (Title) for the United States of America as of the 24th day of October, 1979 as xxxxxxxxxxxxxxxxx be extended to June 30, 1989.
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

2. xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

3. IN WITNESS WHEREOF, the parties hereto have executed this agreement to extend xxxxxxxxx contract as of the 18th day of November, 1981.

Two Witnesses:

Robert E. Wagnie
(Name of Witness)

Box 976 Davis Lk Rd. Morton Wash
(Address)

[illegible signature]
(Name of Witness)

124 Silverbrook Randle Wa
(Address)

UNITED STATES OF AMERICA

By [signature] Title Contracting Officer

MT. ADAMS VENEER CO.
(Purchaser)

By: [signature] Gen. Mgr.

P. O. Box 758, Randle, WA 98377
(Business Address)

I,[4] ______ certify that I am the ______ Secretary of the corporation named as purchaser herein; that ______ who signed this agreement to extend xxxxxxxx contract on behalf of the purchaser was then ______ of said corporation; that said agreement to extend ~~and modify~~ contract was duly signed for and in behalf of said corporation by authority of the governing body, and is within the scope of its corporate powers.

______ Corporate Seal[5]

## Consent of Surety

We, Federal Insurance Company (surety) xxxxxxx do hereby join in this agreement to extend the contract period and agree that our bond shall bind us, our heirs, executors, administrators, successors and assigns, and each and every one of us and them jointly and severally, in the same manner as if said extended period had been included in the original period of contract to insure compliance with which our bond was given.

Dated at Seattle, Washington, this 11th day of November, 1981.

In presence of:

Witness ______ ______

Individual Surety ______ (Seal) ______ (Seal)

Attest: [signature]

Corporate surety: Federal Insurance Company

Business address: 1400 Plaza 600 Bldg., Sea.,Wa. 98101

By [signature]

Title: Theo. W. Backmann, Attorney in Fact

AFFIX CORPORATE SEAL

(18)

ANALYSIS SUMMARY AND

DECISION NOT TO RESELL

D-LYNX TIMBER SALE

LEWIS COUNTY, WASHINGTON

U.S.D.A. FOREST SERVICE

GIFFORD PINCHOT NATIONAL FOREST

RANDLE RANGER DISTRICT

An environmental analysis has been completed for the D-Lynx Timber Sale Area. This sale is located on the Randle Ranger District, Gifford Pinchot National Forest. There were six alternatives considered including the no action alternative and the no change (resell the timber sale in its original configuration) alternative.

Based on the analysis, it is my decision to implement Alternative 2. Alternative 2 is the no action alternative. This alternative will provide the most protection for the streams in the planning area and allow time for these drainages to recover from the extensive timber harvesting done over the past 30 years.

This decision is being made with full knowledge of the ongoing default proceedures and the $3,789,615 in damages being charged to the purchaser of the original Lynx Timber Sale. These charges have been assessed as provided under standard provision B9.4, Failure to Cut.

The alternative driving issues addressed during the analysis were:

1. Fragmentation
2. Threatened, Endangered, and Sensitive Species Habitat (Spotted Owl)
3. Sensitive Plants
4. Riparian Habitat
5. Dead Tree Habitat (Snags and Down Logs)
6. Slash Hazards
7. Big Game Winter Range
8. Water Quality
9. Fisheries/Riparian
10. Soil Stability/Erosion
11. Timber Sale Contract Requirements (Failure to Cut)

Alternative 2 was chosen because it best meets the combination of the soils and water objectives and policies in the Forest Service Manual, the standards and guidelines of the Gifford Pinchot National Forest Land and Resource Management Plan (Forest Plan),and moves toward the desired future condition described in the Forest Plan. The action alternatives meet the desired future condition in the Forest Plan for most of the issues listed but they do not meet the desired future condition for soils and water. The following list includes rationale for the decision.

-- Over the past 30 years, over half of the planning area has been clear-cut. Most of these acres were cut while under private ownership and subsequently became National Forest through land exchange. This has caused increases in peak stream flows, which in turn has caused stream bank cutting and increased sedimentation, which in turn has decreased the frequency of pools in the streams and reduced habitat effectiveness for the fish. Water temperatures that reach

or exceed the state's water quality standards for stream temperature were recorded on 35 different days in the summer of 1988 in Silver Creek. During the 14 year period that the water temperature in Silver Creek has been measured, it has exceeded the state standards on 107 occasions. In Willie Creek, a temperature meeting the maximum temperature standard of 16 degrees centigrade was recorded in 1988. Alternative 2 is the only alternative that will allow this planning area to continue to recover from the effects of the previous logging.

-- Forest Service Manual 2502 objectives are to protect and where appropriate, enhance soil productivity, water quality and quantity, and timing of water flows, and to maintain favorable conditions of stream flow and continuous production of resources from National Forest System watersheds. The action alternatives would all raise the peak flows which are already higher than desirable. They would also reduce the soil stability and productivity because of the increased bank cutting. Alternative 2 is the only alternative that will begin to meet these objectives.

-- Forest Service Manual 2503 states that Forest Service policies are to:

1. Implement watershed management activities on the National Forests in accordance with the general objectives of multiple-use and the specific objectives in the Forest Land Managment Plan for the area involved.

2. Design all management activities of other resources to minimize short-term impacts on the soil and water resources and to maintain or enhance long-term productivity, water quantity, and water quality.

   Multiple-use objectives are being met to some degree, but in this planning area, timber management has clearly been the dominant use in recent years. Choosing an action alternative would further impact the soil and water resources by decreasing the long-term soil productivity and decreasing the water quality.

-- The Forest Plan describes the desired future condition for soil and water. The following paragraph is the description of the desired future condition for the Forest soils and water in 10 years:

> Forest soil productivity is maintained. Water yield, timing and quality have also been maintained. There has been localized improvement in water quality and site productivity as a result of water improvement projects.

Alternative 2 is the only alternative that will enable the water quality and site productivity to improve. The timing of flows and quality of water have not been maintained in recent years. The cumulative impacts of harvesting large portions of these drainages in a short period of time has resulted in a 10 to 19 percent increase in peak stream flows (over natural conditions), an increase in stream sedimentation, a decrease in pool habitat for fish, and stream temperatures that regularly exceed state standards. All the action alternatives either directly or indirectly increase these cumulative impacts. In addition, all the sub-watersheds associated with this timber sale have Aggregate Recovery Percentages (ARP) that are below the Forest red flag indicator of 70%. What makes this a more serious problem than normal is that these sub-watersheds had ARP levels that were much lower in the recent past and they are just beginning to recover. Harvesting too quickly in these drainages could set recovery back even further.

These watersheds need 5 to 15 years to recover from the effects of high water levels. This amount of time would allow stream banks to stabilize, excess sediment to be naturally removed from pools, and ARP levels to increase.

Most of the current logging practices do not create the same impacts that practices did 20 to 30 years ago. However, this area has had considerable damage from those past practices and only time will allow the watersheds to heal.

The following photographs show some of the erosion and water quality effects that have occurred in the planning area due to the cumulative impacts of harvesting in this area in the last 30 years.



The extensive timber cutting in in this area has resulted in increased peak flows in the creeks. This picture shows mass wasting above a stream which is probably the result of bank-cutting that occurred due to the increased peak flows. Bank-cutting increases the sediment that enters the streams and decreases the stability of the slope above the creek. The bank-cutting removes the toe of the slope and creates an unstable situation that can sometimes cause the whole slope to slide into the creek.



This photograph shows one of many debris jams in the D-Lynx area. Jams can cause the creek to change direction and cut into the stream banks or create new channels. During peak flows these jams can also break loose and scour the channel as they flow down the stream.



This photograph shows where a log was jammed into a creek, diverting the stream flow into the bank on the other side. This caused the bank cutting shown here.