TITLE 2400 - TIMBER MANAGEMENT

CHAPTER 2420 - TIMBER APPRAISAL

Contents

*- 2420.1 Authority
2420.2 Objective
2420.3 Policy
2420.31 Price Quotations Before Appraisal
2420.32 Availability of Appraisal Records
2420.33 Location of Manufacturing or Marketing Point
2420.34 Operations of Average Efficiency
2420.4 Responsibility

2421 APPRAISAL THEORY AND PRINCIPLES
2421.1 Residual Value Theory
2421.2 Nature of Stumpage
2421.3 Market Value of Stumpage
2421.4 Appraised Market Value
2421.5 Advertised Rates
2421.6 Base Rate and Adjustment for Regeneration Costs
2421.7 Salvage Sale Fund

2422 APPRAISAL COMPONENTS
2422.1 Basic Data Period
2422.2 Base Period
2422.3 Selling Value
2422.31 Determination of End Product
2422.32 Quality Estimate
2422.33 Lumber Selling Prices
2422.34 Computation of Selling Value
2422.35 Freight Problems
2422.36 Chip and Miscellaneous Byproduct Utilization
2422.37 Product Recovery Studies
2422.4 Production Costs
2422.41 Logging
2422.42 Logging Cost Adjustment Studies
2422.43 Manufacturing
2422.44 Selling
2422.45 Depreciation and Investment Problems
2422.5 Conversion Return
2422.51 Margin for Profit and Risk
2422.52 Determining Margin for Profit and Risk
2422.53 Profit Ratio Guidelines
2422.54 Stumpage Value
2422.55 Analytical Stumpage Appraisals
2422.56 Stumpage Rates by Species and Product Groups
2422.57 Adjustment to Eliminate Deficits -*

*-2423 TIMBER SALE REPORT AND APPRAISAL
2423.1 Timber Sale Report
2423.2 Appraisal

2424 SPECIAL APPRAISALS
2424.1 Rate Redetermination Appraisals
2424.11 Special Characteristics of Rate Redetermination Appriasals
2424.12 Issues on Rate Redetermination Premises
2424.13 Alternate Volume Base Premises
2424.14 Establishment of Redetermined Rates
2424.15 Rate Redetermination Timing
2424.2 Kinds of Rate Redeterminations or Appraisals
2424.21 Scheduled Rate Redetermination
2424.22 Rate Redetermination Upon Application of Purchaser (Emergency)
2424.23 Rate Redetermination After Catastrophic Damage
2424.24 Rate Redetermination for Devalued Timber
2424.25 Rate Redetermination When Contract Period Is Extended
2424.26 Rate Redetermination in Connection With Contract Modification To Prevent Resource and Environmental Damage
2424.3 Appraisal for Determination of Damages in Expired Contracts
2424.4 Stumpage Value of Timber Cut in Trespass
2424.5 Exchange (Reserved)
2424.6 Settlement (Reserved)
2424.7 Simplified Stumpage Appraisal by Comparison
2424.8 Special Instructions for Reappraisal of Contracts Written on Form 2400-2.

2425 SELLING VALUE AND COST COLLECTION -*

*- Market value or appraised value as defined above is not necessarily the highest price received for similar timber by competitive bidding. In the sale of National Forest timber, except as provided in 36 CFR 223.5, each sale of more than $10,000 appraised value must be advertised for at least 30 days and sold at the highest qualified bid. Thus the bid price or selling price is apt to be greater than the appraised value because the appraised value is based on the operator of average efficiency and is aimed at a market value which will interest sufficient purchasers to harvest the allowable annual cut offered for sale.

The criterion for establishing market value - a willing buyer and a willing seller, neither under compulsion to deal - is seldom encountered in National Forest timber sales. Purchasers frequently are in immediate need of timber to remain in production. The Forest Service is committed to offer timber for sale on a regular basis in accordance with financed sale targets. The Forest Service appraisal is the best available estimate of what the market value of stumpage would be if the "willing" criterion were met.

<u>2421.4</u> - <u>Appraised Market Value</u>. Since no two tracts of timber are identical, it follows that the stumpage prices paid or to be paid for any two tracts cannot be directly compared without adjusting for the physical or quality differences between them. Analytical appraisals are used both for stumpage transaction comparisons and for making market value determinations for new offerings.

The Forest Service analytical appraisal is a two-part system. First, the conversion return is developed by deducting costs from selling values. Second, the conversion return is divided into stumpage and profit margin. The first step is used to reconcile the differences between tracts as to quality and accessibility.

The second step is used to make a division of this conversion return of the tract in the same proportions as average purchasers are dividing conversion returns of tracts to be operated under similar conditions.

1. <u>Criteria for Dividing Conversion Return</u>. The dividing mechanism, profit ratio or other methods, which is obtained from analytical appraisal of those current sales where there is a reasonable balance between alternate purchasers and alternate timber supplies, can be expected to produce a profit margin and residual stumpage which fill two criteria:

a. A profit margin sufficient to maintain operations over the long run. -*

*- b. An appraised stumpage equal to current market value considering lumber market trends.

The Forest Service appraisal policy is not designed to penalize efficiency nor subsidize inefficiency. Consequently, all cost and selling values used in timber appraisals are those of an operator of average efficiency.

2. <u>Analytical Appraisal Guidelines</u>. Highly efficient purchasers can consistently overbid Forest Service sale offerings and still figure to make a profit margin they consider adequate. In determining profit ratios from current transactions to be used as one of the guides in dividing analytical conversion returns this effect must be factored out.

The analytical appraisal, therefore, should produce appraised market-value prices for stumpage which:

a. Are based upon long-term profit considerations.

b. Are sensitive to forest-product market changes.

c. Are appropriate for the average efficient purchaser.

d. Are responsive to the actual prices being paid for stumpage thus giving the United States a fair return for its stumpage.

e. Reflect all conditions of sale under which National Forest timber sales are made.

The fundamental rule in determining the items to be included and the general scope of timber appraisal is to include consideration of all significant factors affecting stumpage price. Established guidelines for systematic work should be observed whenever applicable. If, in the judgment of the appraiser, observance of the guidelines would prevent proper consideration of all significant factors, he should present his findings in a manner which does properly evaluate them. However, the appraiser must bear the burden of proof of justification for departure from established appraisal guidelines and he should explain his course of action.

<u>2421.5</u> - <u>Advertised Rates</u>. Appraised value, or appraised rate, means a value or rate resulting from an appraisal which considers all costs, including construction costs for specified roads. Such value or rate includes stumpage value plus additional amounts of deposits for sale area betterment (Act of June 9, 1930, 46 Stat. 527, 16 U.S.C. 576b). The term "net appraised rate" is sometimes used -*

*- in place of appraised rate to emphasize that this rate differs from advertised rate as used in form 2400-5 and 2400-6 contracts. The latter includes the estimated costs of specified roads and the advertised rate therefore exceeds the net by that amount.

2421.6 - Base Rate and Adjustment for Regeneration Costs. Base rate is the lowest rate at which timber will be advertised under the authority of 36 CFR 223.4, even though standard appraisal calculations indicate lower rates. Base rates will be the applicable minimum rates increased where necessary to produce a total value at base rates equal to the value at $0.50 per M board feet plus the cost of regeneration made necessary by the sale. Where increases are applicable, minimum rates for each species group in the sale normally will be increased by an equal amount per M board feet. For example:

| | |
|---|---|
| Sale volume 10,000 M at $0.50 . . . . | $ 5,000 |
| Regeneration costs . . . . . . . . . . . . | 24,000 |
| Regeneration costs plus 50 cents . | 29,000 |

| Species | Estimated volume, M | Minimum rates Per M | Minimum rates Total | Base rates Per M | Base rates Total |
|---|---|---|---|---|---|
| Pine | 5,000 | $3.00 | $15,000 | 1/$3.40 | $17,000 |
| Fir | 5,000 | 2.00 | 10,000 | 1/ 2.40 | 12,000 |
| | 10,000 | | $25,000 | | $29,000 |

1/ Minimum Rates, $25,000; regeneration costs plus 50 cents, $29,000; difference, $29,000 minus $25,000, equals $4,000; $4,000/10,000 M equals 40 cents per M above minimum rates.

Note that in the immediately foregoing example, minimum rates would have applied if the total regeneration costs plus 50 cents had been $25,000 or less.

The described procedure is the preferred method. However, if some species appraised rates are well above and others are below minimum rates, this procedure may cause the low-value species to be advertised at above their appraised values when it is not necessary to do this in order to make available the amount needed to cover costs of regeneration. In such cases, a second method may be used. The amount of the increase above minimum rates for the low-valued species may be eliminated and offset by a compensating larger increase in the base rates for the higher-valued species. If fir appraised at $0.00 in the example, such a situation would result in base rates of $3.80 per M for pine (for example, $3 plus $4,000/5,000 M) and $2 per M for fir, totaling $29,000 as in the example. -*

*-An adjustment comparable to that shown may prove necessary when the appraised net stumpage is compiled on form 2400-17.

2423 - TIMBER SALE REPORT AND APPRAISAL. As indicated by its title, there are two parts to this item:

2423.1 - Timber Sale Report. The timber sale report is the narrative report. Its purpose is to document the objectives of the sale and how it was planned and prepared. The report must include all of the information which the approving officer needs to determine that the sale has been prepared in accordance with laws, regulations, and the current multiple use plan.

The report will include the following parts:

1. The environmental analysis report.

2. An amplification of section IX of environmental analysis report which (1) explains how the identified requirements and constraints have been accommodated in the sale layout and sample contract, (2) compares the involvement in the preparation work by persons with special skills, with the skills identified as needed in the environmental analysis report, (3) summarizes the advice obtained and how it was utilized, (4) explains the bases for any decisions contrary to such advice and (5) explains any failure to utilize needed skills. Written reports, recommendations, etc., from specialists should be appended to the timber sale report.

3. To the extent not included either in the above or in the appraisal, other information needed to provide a complete picture of the offering, such as volume and cruise data, discussion of markets, etc.

4. A certification that the sale meets the requirements of 36 CFR 223.3.

5. Such other information as the Regional Forester may require.

2423.2 - Appraisal. The appraisal is essentially a statistical summary which is necessary to document that fair market value has been developed. Sufficient written explanations of such things as data sources and appraisal premises, must be included to provide a clear picture of the whole. While material covered in the timber sale report should not be duplicated in the appraisal, there may be need to include therein certain key portions of the report to clarify the appraisal. -*

*- The amount of detail contained in an appraisal will depend on the volume and value of the timber involved and the need for supplying information to the approving officer to support the appraised value. For small Ranger sales, the appraisal may be very brief and consist of an appraisal summary and explanatory notes. Appraisals which require a review and approval of a Forest Supervisor, a Regional Forester, or the Chief should be prepared in more detail. These latter appraisals should develop and present clearly and concisely the relevant data on which they are based, and give reference to the source of the data. The soundness of an appraisal will be in proportion to the completeness, accuracy, and applicability of the data used and the good judgment and accuracy with which these data are applied. All essential facts must be included. Given the essential data, a systematic arrangement of the conclusions will be of considerable aid. First, a clear summary gives the appraiser a better opportunity to follow the different items, step by step, to guard against omissions and errors, and to see whether the variations from other appraisals of similar timber are logical and well considered. Second, systematic treatment gives the reviewing officer who must act on appraisals prepared by different men, a uniform arrangement of the salient points and a check to assure himself that the estimate of market value appears reasonable and that it is consistent with values developed in other cases.

The Forest Service, in dealing with a great number of purchasers, some of whom may buy timber on several Forests and in different Regions, must have a high degree of consistency in application of appraisal procedures in determining stumpage values. The presentation should be as brief as practical, yet the appraiser must guard against seeking brevity as an objective at the expense of leaving out essential information. Clarity and simple computations are desirable in order that the basis of derived values can be easily followed by a reviewer. The essence of the usual pay-as-cut appraisal can be summarized under the following headings:

1. Volume Data. A volume estimate, made with an intensity commensurate with the values at stake, is the first consideration. The volume compilation should show by species or groups of species the total gross and net volume of the stand, cull factors, gross and net volumes per acre, volume to be cut, and the quality of timber. The report should show the date, intensity, method and reliability of the volume estimate and the tree and product utilization standards on which the estimate is based. It should also explain the basis and reliability of the quality estimate.

2. Plan of Operation. The plan of operation, contemplated rate of cutting, and order of cutting should be briefly summarized. In the report, such items as the following should be discussed: -*

*- a. Method of operation contemplated, including logging method, transportation, manufacture, and period of operation--seasonal or yearlong.

b. Location of timber with respect to market to which appraised, shipping and appraisal point, distance of haul by road classes or by other means, such as rail or water, location with respect to other markets, and relative transportation costs.

c. Market requirements as to specifications, and the demand for each class of material.

d. Contract provisions needed to implement sale layout and appraisal items. If special provisions are needed, this need should be thoroughly documented and a draft provided.

3. Selling Prices. The appraisal report should clearly state the basis for the selling prices used and how they are developed. A summary of the computations to develop selling prices by species and products should be included in the report. The period on which the lumber selling prices by grades are based should be stated. When the period on which selling prices are based is different from the cost period, it should be explained and justified.

4. Production Costs. Production costs should be developed on the unit basis by which the timber will be offered for sale and measured. The period on which the costs are based and the source of data should be stated. Each item of cost that applies to the timber being appraised should be developed with explanation for any unusual costs. A departure from the standard classification may in some instances be necessary and in such cases it should be explained. The explanation should bring out that all costs are included with no duplicate entries.

5. Division of Conversion Return. Summarize the computations by major logging and manufacturing cost items, and determine the conversion return by species and average all species. Divide the conversion return between stumpage and profit margin. Compare the results with other recent and similar sales in the general area.

6. Discussion of Appraised Values. The appraisal is not complete without a discussion of the derived stumpage values and the profit margin. At this point, the appraiser should review his work prepare a statement to support his conclusions. In preparing this statement, he should consider market trends, risk, accuracy of data, transaction evidence, and any other factors which are pertinent to determination of values. Here is where the appraiser must -*

*- a. Method of operation contemplated, including logging method, transportation, manufacture, and period of operation--seasonal or yearlong.

b. Location of timber with respect to market to which appraised, shipping and appraisal point, distance of haul by road classes or by other means, such as rail or water, location with respect to other markets, and relative transportation costs.

c. Market requirements as to specifications, and the demand for each class of material.

d. Contract provisions needed to implement sale layout and appraisal items. If special provisions are needed, this need should be thoroughly documented and a draft provided.

3. Selling Prices. The appraisal report should clearly state the basis for the selling prices used and how they are developed. A summary of the computations to develop selling prices by species and products should be included in the report. The period on which the lumber selling prices by grades are based should be stated. When the period on which selling prices are based is different from the cost period, it should be explained and justified.

4. Production Costs. Production costs should be developed on the unit basis by which the timber will be offered for sale and measured. The period on which the costs are based and the source of data should be stated. Each item of cost that applies to the timber being appraised should be developed with explanation for any unusual costs. A departure from the standard classification may in some instances be necessary and in such cases it should be explained. The explanation should bring out that all costs are included with no duplicate entries.

5. Division of Conversion Return. Summarize the computations by major logging and manufacturing cost items, and determine the conversion return by species and average all species. Divide the conversion return between stumpage and profit margin. Compare the results with other recent and similar sales in the general area.

6. Discussion of Appraised Values. The appraisal is not complete without a discussion of the derived stumpage values and the profit margin. At this point, the appraiser should review his work prepare a statement to support his conclusions. In preparing this statement, he should consider market trends, risk, accuracy of data, transaction evidence, and any other factors which are pertinent to determination of values. Here is where the appraiser must -*

*- justify his conclusions and make the record clear that he has determined current market value for the timber.

7. Appraisal Summary Form. The appraisal summaries on the backs of forms 2400-17 and 2400-19 provide for summarization of appraisal data.

Each timber sale report and rate redetermination report should include a copy of the appropriate form completed as to the appraisal summary information. After bids have been received, or after redetermined rates have been established, the front of the appropriate form will be completed. Instructions are given on the form, as well as in FSM 2492 (form 2400-17) and FSM 2493 (forms 2400-19 and -19a).

## 2424 - SPECIAL APPRAISALS

2424.1 - Rate Redetermination Appraisals. (36 CFR 223.3). Rate redetermination, where included in contracts, provides for periodic adjustment of stumpage rates at intervals.

The objective of a rate redetermination is to arrive at current market stumpage value as of the effective redetermination date, subject to the provisions of the contract. The rate redetermination will be made as though the sale were a new offering being originally appraised for bid opening on the effective rate redetermination date, using the standard Forest Service appraisal methods and appraisal data in effect 45 days prior to the rate redetermination date. This will produce redetermined rates analogous to the minimum acceptable bid rates on the subject timber, if it were offered for sale on the rate redetermination date. This is because a delay of approximately 45 days is experienced on new sales between the date of appraisal and the date scheduled for opening bids after a normal advertising period. Unless the contract specifically provides otherwise, or the contract has been previously modified or is being modified coincidentally with the subject rate redetermination to provide otherwise, the appraisal should be based on the original contract requirements and appraisal premises. Except for limited rate redeterminations, the appraisal should use the latest standard appraisal procedures and data in use in the Region as of 45 days prior to the rate redetermination date, and it should also reflect applicable information and experience gained on the specific sale area since the original appraisal or since the previous rate redetermination. In limited rate redeterminations, original procedures must be used with data in effect 45 days prior to the effective date. -*

*- 2424.25 - Rate Redetermination When Contract Period Is Extended. If the contract is extended at the request of the purchaser, a rate redetermination will be made either for the timber on the sale as a whole, or for the timber to be cut during the ensuing period depending upon the wording in the contract for sales with scheduled rate redetermination provision. For sales without scheduled rate redeterminations, extension rate redeterminations will be based on the sale as a whole.

1. The rate redetermination will be made as though the sale were a new sale being originally appraised, using the standard appraisal method and data in effect 45 days prior to the expiration date. If the weighted average redetermined rates plus the weighted average bid premium rates on the volume remaining are greater than the weighted average current contract rates in effect immediately prior to the extension the new rates will be placed in effect. Otherwise the rates in effect at time of extension will remain in effect. The proportion by species of the remaining volume can be the deciding factor in determining whether weighted average value of redetermined rates plus bid premium is higher than the weighted value of current contract rates applied to the remaining volume. For this reason, a reliable estimate of the remaining volume by species must be made. The established rates of any species-product cannot be less than the current contract rate. Therefore, appraised rates for some species-products may need to be adjusted downward to compensate for establishing current contract rates for those species-products which appraise below current contract rates, in order that the redetermined plus bid premium value of the remaining timber will not be changed. Unused purchaser credits for specified road construction may be carried forward into the extension period.

Revised cost estimates will be prepared for specified road work which has not been done. The revised purchaser credit limit for each road or segment will be the sum of the purchaser credit earned as of the date of the appraisal for extension and the current estimate using the most recent cost guide of the cost of road work which has not yet been done. If the most recent Form 2400-21, Report of Purchaser Credit for Specified Road Construction, does not reflect the actual construction status as of the rate redetermination date, an updated report will be prepared so that the work accomplished to that date is accurately reflected. In an extension rate redetermination (2400-5 contract) or appraisal for extension (2400-6 contract), the purchaser credit limit may be increased or decreased to correspond with the revised estimates, only if new appraised stumpage rates are placed in effect for the extended period. If purchaser credit is increased, it may not be increased -*

*- by more than the increase in contract value that is made as a part of the extension. This is based upon the principle that the Forest Service will not accept less for the remaining timber than would have been received under the rates in effect prior to extension. For stumpage-rate adjustment sales, "rates in effect" as used in the above sentence are considered to be the stumpage-rate formula, which includes tentative rate, bid premium rate, base index, and purchaser credit limit.

2. If the contract term is extended subsequent to a contract-term adjustment, a reappraisal must be made for the extension just as though no contract-term adjustment had been made. Therefore, appraisal methods and data will be the standard methods and data in effect 45 days prior to the original expiration date or any extensions, but not adjustments, thereof. The foregoing procedure will ensure that the granting of a contract-term adjustment will neither penalize nor benefit the purchaser insofar as rates during the extended period are concerned.

The contract-term adjustment will merely provide additional operating time at the original stumpage rates, to replace time lost as a result of force majeure event. The procedure will also eliminate speculation in making decisions as to whether or not a contract term adjustment will be to the purchaser's benefit during an extension period following the contract term adjustment.

See FSM 2424.8 for special instructions for 2400-2 contracts.

<u>2424.26 - Rate Redetermination in Connection With Contract Modification To Prevent Resource and Environmental Damage.</u> When environmental conflicts develop or are recognized after a timber sale has been sold, contract modifications going beyond the original intent of the offering may be approved, within certain specified limits. Rates will be redetermined as a part of the modification, and adjustments in stumpage rates will be made if the rate redeterminations justify such adjustments. Rate redeterminations for resource/environmental adjustments are made as though the change were the result of catastrophic damage, as described in FSM 2424.23, with four exceptions: (1) An adjustment rate will be calculated for each species and applied to each species. If a negative adjustment causes one or more species stumpage rate to be below base rates the deficit will be written off against the remaining positive value species on the basis of a sale-as-a-whole package deal, (2) rates may not be set below base rates, (3) timing relative to effective date and (4) escalation ceilings should not be changed.

If a modification is made during the original period of contract, but not in conjunction with a scheduled or other type of rate redetermi- -*

*- 2424.3 - Appraisal for Determination of Damages in Expired Contracts. When the purchaser fails to cut and remove all of the included timber by the expiration date, it is necessary to determine whether or not the United States has suffered damages from loss of stumpage value. The general measure of such damage is the extent to which the resale value of remaining timber is less than the amount the purchaser would have paid had he completed the contract. Timber sale contracts define the latter as the value at the stumpage rates in effect at termination. This value is called current contract value in contract form 2400-6.

Resale value of the remaining timber is defined as the appraised value at termination or the actual value bid in a resale, whichever is greater. Because the appraised value is the minimum resale value, irrespective of subsequent actions, the first step in determining damages is to appraise the remaining timber using standard Forest Service methods in effect at termination and under the original contract terms and conditions. The latter will include completion of all uncompleted work required of the original purchaser or made necessary by his operation. The volume and quality of the remaining timber and its accessibility must be carefully determined, as well as all other factors influencing its value. Note that the appraised value developed as described above may be different from the appraised value, exclusive of bid premium, which would have been developed for extension because the latter would have been based on data in effect 45 days prior to termination.

Appraised value must be developed so as to be comparable with current contract value. For 2400-5 or 2400-6 contracts, the appraisal, or rate redetermination must develop an estimated market value of the remaining timber as though the specified roads were in place. (Unused purchaser credit will be applied to reduce damages otherwise indicated.) For other contracts the appraisal will develop net stumpage value. If damages are indicated and the timber is subsequently resold, it may be necessary to adjust the bid value received, which will be gross stumpage, to determine a resale value which is comparable to the current contract value.

When the appraised value, determined as described above, is equal to or greater than current contract value at termination, there will be no damages assessed for loss of stumpage value regardless of how the timber is subsequently offered and what value is received. However, there may be other damages including the cost of resale.

When the appraised value is less than current contract value, determination of resale value and hence, damages, will depend on when and how the timber is reoffered. While there are four principal situations, individual cases may involve unusual conditions -*

*- and require special treatment. All damage cases, involving uncompleted expired contracts, over $2,000 in value and those cases in which the timber is not reoffered for resale, reoffered under different conditions, or any part reoffered, must be reviewed and approved by the Regional Forester. All damage cases involving abandoned or unexpired contracts will be reviewed by the Regional Forester who will consult with the field representative of the General Counsel. The four situations are:

1. Timber Not Reoffered for Sale. In this situation, resale value is appraised value as discussed above and the United States will be considered to have been damaged in the amount that resale value is less than current contract value.

2. Timber Reoffered Under Original Conditions. When the remaining timber is offered for resale under the original conditions, resale value is the greater of (1) bid value of the resale and (2) appraised value as discussed above. As in item 1, damage is the amount by which resale value is less than current contract value.

The choice between items 1 and 2 is necessary because there may be no buyers, or because resale may be delayed for some time after expiration. In such cases, if the market has dropped significantly by the time of resale, the resale value might be lower than it would have been if resale had been made promptly following the expiration date. Note that when the timber is reoffered, advertised rates will be based on the market at the time of advertisement and not at the time of expiration.

3. Timber Reoffered Under Different Conditions. It may be desirable to reoffer the remaining timber, but under different contract provisions from those in the original sale. Under such circumstances, it is necessary to make two appraisals. The first is made under the assumption that the original contract provisions apply, and the second assumes changed provisions. Both appraisals will be made using standard methods in use at expriation. The differences between the two appraisals is the effect of the changed conditions on the value of the remaining timber. This difference , if it reduces the value of the remaining timber, will be used to reduce damages.

Example:

The contract value of uncut timber at expiration date is $6,000. An appraisal of the uncut timber, using standard method of appraisal for new sale offerings and assuming the original contract -*

*- provisions, is $4,000. An appraisal of the uncut timber using standard method of appraisal for new sale offerings, but assuming changed contract provisions (skyline yarding, instead of tractor skidding, for example) is $3,000. Thus, the changed conditions have reduced the appraised value by $1,000 (from $4,000 to $3,000). This change must be considered in damage determination. An adjustment for market change as discussed in item 2, above, may be necessary, also.

If changed contract provisions result in an increase in appraised value for uncut timber, the changed condition value would not be used in damage determination. Damage in that event is determined as in item 2.

4. Timber Reoffered Partially. The example discussed in item 3 presumes that all of the uncut timber will be resold. It may be appropriate, for environmental or other reasons, to reoffer only a portion of the uncut timber, or to include a portion of the uncut timber with other timber. When these alternatives are appropriate, the prices received for the reoffered timber are not as good a measure of damages as when the entire volume of uncut timber is sold as a package. When partial reofferings are made, careful study should be given to present a defensible analysis of the exact damages suffered by the government.

The first step should always be to determine the difference between the contract value of the uncut timber at expiration date and the appraised value of the uncut timber under the same contract conditions in effect at time of expiration, using the standard appraisal method in effect for new offerings. A detailed analysis will be needed of bid results for the portions of the sale that are resold, to determine whether or not the resale values justify any reduction of the appraised damages. Bid prices higher than contract value should be carefully considered. Bid premiums in excess of appraised value should also be considered, even though the resale value, itself, is lower than contract value, due to market conditions.

For example, an expired sale has uncut timber with a contract value of $10,000. It appraises at $9,000 as of the expiration date. Thus, appriased damage is $1,000. If it is decided to resell only half of the timber, advertised at $4,500, and the timber is bid in at $5,000, there is no loss on that half. The other half remains unsold with an appraised $500 of damages. However, if study indicates the probability that the other half would also have been bid in at $500 above the appraisal, had the Forest Service chosen to include it in the resale, the appraiser could recommend that in his -*