( 128.69)

SALE NAME: D LYNX DAMAGE SUMMARY CHECKED BY: DATE: 04/24/90

CARD TYPE 5

SPECIFIED RD CONST (MILES) .0 (17-19) RECONSTRUCTION (MILES) .0 (20-22) PURCH CR LIM $ 0 (23-29) (INC. $ 0 P&R **)

PRODUCT: APPRAISED TO: HAUL (MILES) 16 (33-35) TEMP RD CONSTR (MILES) 3.0 (30-32) TEMP RD COST $ 29830 (36-42)

1 RANDLE WASH
4 RANDLE WASH
0 X

BASIC DATA PERIOD: C.Y.1987R
ADJ TO APPR BASE PERIOD: LBR: IC 3RD QTR 1989, ALL OTHERS SEP 1989 PLY: SEP 1989

| | CARD TYPE 6 | | | | | | CARD TYPE 7 | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | PRODUCT/UNIT | (14-15) | 1-1 | 1-1 | 1-1 | 4-1 | UNIT OF MEASURE: 1 (14) | | |
| 2 | SPECIES | | D | H&O | C | PAM* | | | |
| 3 | SPECIES CODE | (16-18) | 205 | 263 | 242 | 002 | (T) TOTAL OR (A) AVERAGE: | | |
| 4 | % BY SPECIES | | 49.87% | 41.25% | 3.66% | 5.22% | T | 100.0 % | |
| 5 | VOLUME | (19-25) | 19100 | 15800 | 1400 | 2000 | T | 38300 | (17-23) |
| 6 | SELLING VALUE | | 601.72 | 337.91 | 461.01 | 247.20 | A | 469.23 | |
| 7 | SV ADJUSTMENT, SCHEDULE 1089 | | 1.176 | 1.080 | 1.000 | 1.000 | | | |
| 8 | ADJ SELLING VALUE | | 707.62 | 364.94 | 461.01 | 247.20 | | | |
| 9 | CHIP & BYPRODUCTS | | 40.03 | 45.60 | 0.00 | 0.00 | | | |
| 10 | SELLING VALUE L.S. | (26-31) | 747.65 | 410.54 | 461.01 | 247.20 | A | 571.97 | |
| 11 | FALLING & BUCKING | | 12.12 | 12.12 | 12.12 | 3.63 | A | 11.68 | (24-28) |
| 12 | SKIDDING | | 15.94 | 15.94 | 15.94 | 10.63 | A | 15.66 | (29-33) |
| 13 | LOADING | | 6.30 | 6.30 | 6.30 | 5.36 | A | 6.25 | (34-38) |
| 14 | SUBTOTAL, STUMP-TO-TRUCK | | 34.36 | 34.36 | 34.36 | 19.62 | | | |
| 15 | HAUL HAUL AND SCALE | | 20.31 | 20.31 | 20.31 | 16.93 | A | 20.13 | (39-42) |
| 16 | ROAD MAINTENANCE CO-OP $3.16 | | 3.66 | 3.66 | 3.66 | 0.00 | A | 3.47 | (43-46) |
| 17 | SUBTOTAL, TRANSPORTATION | | 23.97 | 23.97 | 23.97 | 16.93 | | | |
| 18 | GENERAL LOGGING OVERHEAD | | 13.96 | 13.96 | 13.96 | 10.28 | A | 13.77 | (47-50) |
| 19 | LOGGING DEPRECIATION | | 5.54 | 5.54 | 5.54 | 4.73 | A | 5.50 | (51-54) |
| 20 | SUBTOTAL, ADMINISTRATIVE | | 19.50 | 19.50 | 19.50 | 15.01 | | | |
| 21 | SLASH DISPOSAL (INC. 4.39 CO-OP) | | 16.72 | 16.72 | 16.72 | 0.00 | A | 15.85 | (55-58) |
| 22 | EROSION CONTROL | | 1.97 | 1.97 | 1.97 | 0.00 | A | 1.87 | (59-62) |
| 23 | SNAG DISPOSAL | | 0.00 | 0.00 | 0.00 | 0.00 | A | .00 | (63-66) |
| 24 | FIRE & OTHER | | 0.67 | 0.67 | 0.67 | 0.57 | A | .66 | (67-70) |
| 25 | SUBTOTAL, ENVIRONMENTAL PROTECTION | | 19.36 | 19.36 | 19.36 | 0.57 | | | |
| 26 | TEMPORARY ROADS | | 0.82 | 0.82 | 0.82 | 0.00 | A | .78 | (71-74) |
| 27 | OTHER TEMPORARY DEVELOPMENTS | | 0.00 | 0.00 | 0.00 | 0.00 | A | .00 | (75-78) |
| 28 | SUBTOTAL,TEMPORARY DEVELOPMENT | | 0.82 | 0.82 | 0.82 | 0.00 | | | |
| 29 | SUBTOTAL, LOGGING COSTS | (32-36) | 98.01 | 98.01 | 98.01 | 52.13 | A | 95.62 | |
| 30 | SPECIFIED ROAD COST (A10) | | 0.00 | 0.00 | 0.00 | 0.00 | A | .00 | |
| 31 | TOTAL LOGGING COST L.S., SCHEDULE 0589 | | 98.01 | 98.01 | 98.01 | 52.13 | A | 95.62 | |
| 32 | MFG. COST L.S. (INCL. PRODUCT HAUL) | | 142.30 | 153.60 | 157.01 | 120.00 | A | 146.33 | |
| 33 | WASH STATE EXCISE TAX | | 22.13 | 6.45 | 8.56 | 2.90 | A | 14.16 | |
| 34 | SUBTOTAL, MANUFACTURING | (37-41) | 164.43 | 160.05 | 165.57 | 122.90 | A | 160.50 | |
| 35 | TOTAL PRODUCTION COST L.S. | | 262.44 | 258.06 | 263.58 | 175.03 | A | 256.12 | |
| 36 | CONVERSION (10)-(35) | | 485.21 | 152.48 | 197.43 | 72.17 | A | 315.86 | |
| 37 | P&R RATIO % NORMAL/ADVERTISED | | 6.00 | 6.00 | 6.00 | 6.00 | NORM | 6.0 ADV | 6.0 ** |
| 38 | P&R MARGIN NORMAL/ADVERTISED | | 42.62 | 23.40 | 26.28 | 14.09 | NORM | 32.60 ADV | 32.60 ** |
| 39 | INDICATED NET STUMPAGE (36)-(38) | | 442.59 | 129.08 | 171.15 | 58.08 | A | 283.26 | |
| 40 | INDICATED ADVERTISED RATES (39)+(30) | | 442.59 | 129.08 | 171.15 | 58.08 | T | 10848702.96 | |
| | | | | | | | A | 283.26 | |
| 41 | BASE RATES | | 20.00 | 10.63 | 20.00 | 2.00 | A | 15.19 | |
| 42 | ADJUSTMENTS TO BASE RATES | | 0.00 | 0.00 | 0.00 | 0.00 | A | .00 | |
| 43 | ADVERTISED RATES (40)+(42) | (42-47) | 442.59 | 129.08 | 171.15 | 58.08 | T | 10848702.96 | |
| | | | | | | | A | 283.26 | |
| 44 | INDICATED STAT NET RATES(43)-(30) | | 442.59 | 129.08 | 171.15 | 58.08 | A | 283.26 | |
| 45 | APPRAISED NET RATES | (48-53) | 442.59 | 129.08 | 171.15 | 58.08 | A | 283.26 | |
| 46 | BASE INDICES | | 311.49 | 248.22 | 0.00 | 0.00 | | | |

* PAM ACTUALLY APPRAISED AT $ 216.72,/ACRE FOR 536 ACRES.

90012356

RECEIVED
Directives, Forms and
Reports Mgmt. Group
MAR 2 1981
Reviewed by________

FOREST SERVICE MANUAL
WASHINGTON

February 1981

RECORD COPY

TITLE 2400 - TIMBER MANAGEMENT

Amendment No. 123

POSTING NOTICE. Amendments to this title are numbered consecutively. Check the last transmittal received for this title to see that the above amendment number is in sequence. If not, order intervening amendments at once on form 1100-6. Do not post this amendment until the missing one(s) is received and posted. After posting retain this transmittal until the next amendment to this title is received. Place it at the front of the title.

| Page Code | Superseded (Number of Sheets) | New (Number of Sheets) |
|---|---|---|
| (Entire chapter) | | |
| 2430--1 thru 2437 | 127 | - |
| 2430--1 thru 2438.5 | - | 157 |
| ID No. 62, FSM 2430, 2/27/80 | | |
| ID No. 63, FSM 2430, 4/4/80 | | |
| ID No. 66, FSM 2430, 8/19/80 | | |
| ID No. 67, FSM 2430, 8/19/80 | | |

83018413

2433.6 - Action When Timber Sale Contract Has Expired Prior to Completion. When a timber sale contract has expired leaving material which was required to be removed under the contract, action must begin immediately to determine if the United States will be damaged (FSM 2433.53). If so, the Forest Service shall seek compensation for said damages and prevent and/or remedy future or increasing damages. This includes (1) seeing that all remaining work required of the original purchaser or made necessary by the purchaser's operation (particularly--that needed to repair or prevent physical damage to resources or improvements) is performed in a timely fashion, and (2) promptly reoffering the remaining timber unless there is an overriding reason not to do so (FSM 2433.52).

Remaining work may be completed by (1) the defaulter; (2) Forest Service, using defaulter's deposits, forfeited bonds including payments made by sureties (FSM 6531.12a), appropriated funds, or a combination of such funds; (3) surety; or (4) purchaser of the resale. The approach or combination of approaches to be used shall depend upon the attitude and ability of the defaulter; the kind, amount, and urgency of the work; and the schedule for reoffering the timber.

Except for the work that logically should be deferred and accomplished in conjunction with the harvest of remaining timber, the defaulted purchaser should be notified of the remaining work and requested to do it as set forth in the settlement provision of the timber sale contract. If the purchaser refuses, any unencumbered deposits on hand should be used in the manner authorized by the contract (FSM 2451.95). Work remaining after all available deposits are used may be accomplished in several ways.

If the work must be done promptly to avoid damage, such as may be the case where the rainy season is at hand and erosion control structures are needed, any available appropriated funds which may be expended properly for the purpose shall be used. If damage is not imminent and an unacceptable delay in the planned reoffering shall not result, surety may be requested to do the work. Otherwise, any nonurgent work may be required of the resale purchaser.

There may be monetary damages for loss of stumpage value when the appraised value of the remaining timber, as of the

expiration date and under the original terms and conditions, is less than the contract value just prior to expiration.

Prompt advertisement under the original contract provisions shall facilitate determination and collection of damages. This is the preferred practice. All uncompleted work required of the original purchaser or made necessary by the purchaser's operation and not otherwise programmed for accomplishment shall be required of the resale purchaser. However, the remaining timber may be reoffered under different terms when clearly necessary to provide adequate resource coordination and/or to meet current environmental protection standards. Different terms may include different harvest methods or other changes which preclude reoffering all of the remaining timber. Sales which need to be reoffered on terms significantly different from those in the original sale should be reviewed by the Regional Forester, who shall consult with the Regional representative of the General Counsel, as appropriate. Damages shall be computed in a different manner for sales offered under changed sale conditions (FSM 2424.3).

When there is an overriding reason which precludes reoffering the remaining timber, the resale value is the appraised value at expiration, adjusted as appropriate to reflect transaction evidence.

<u>2433.7</u> - <u>Cancellation of Contracts.</u>

<u>2433.71</u> - <u>Authority.</u> Cancellation is the termination of a contract prior to the specified termination date. Contracts may be canceled under the conditions listed in 36 CFR 223.9 (FSM 1023.4). Implementing provisions for this authority are contained in timber sale contracts as follows:

1. 36 CFR 223.9 (a) (1)
   a. 2400-2 - Section 12b - Termination.
   b. 2400-3 - Paragraph 14.
   c. 2400-5 and 5T - B8.25 - Breach (FSM 2453.82e).
   d. 2400-6 and 6T - B9.3 and BT9.3 - Breach (FSM 2451.93 a 2452.93)



83018656

2435.03 - Policy.

1. To assist in obtaining optimum practical use of salvable wood material from national Forest lands, a salvage sale fund shall be established on each proclaimed National Forest which has salvage opportunities.

2. Funds authorized to be collected for deposit into the SSF shall only be from salvage sales or from other sales containing a salvable component to be sold.

3. Minimum rates in timber sale contracts shall not be increased to insure the collection of needed salvage funds. (36 CFR 223.4.)

2435.04 - Responsibility. Two areas of responsibility are identified and assigned to the officer authorized to approve the timber sale (FSM 2404.13): (1) Determination that the sale qualifies as a salvage sale. The Forest Officer making this determination must be guided by the definition in FSM 2435.05-item 1. (2) Approval of the SSF plan (FSM 2435.24) and subsequent revisions thereto.

Approval of a salvage sale carries with it the same responsibilities as approval of a normal timber sale. Forest Officers approving salvage sales must insure that the sale is in full compliance with 36 CFR 223.3 and the applicable land management plan. Particular attention needs to be given to retaining adequate habitat for cavity-nesting birds.

2435.05 - Definition.

1. Qualifying Sales. A salvage sale is one in which the primary reason for entry is to salvage insect-infested, dead, damaged, or down timber. It may also include associated trees for stand improvement, if it is efficient and desirable to include them in order to leave the area in a productive condition. An approved silvicultural prescription shall be prerequisite to including the following types of trees for stand improvement.

a. Trees predicted to be in imminent danger of insect or disease attack or windthrow and other high risk trees that are expected to die from any cause before the next harvest (or compartment) entry. The harvest of high risk



8301871

trees is applicable only to species, such as ponderosa pine, for which systems of risk or sanitation cutting have been developed.

b. Trees impacted by disease to the extent that their net growth is nominal and diseased trees that, if left in place, would adversely affect the growth of other trees.

c. Trees which because of their species or genetic inferiority are undesirable as a source of natural regeneration on the site.

d. Trees which must be removed for access to and operations of the sale.

e. Trees in understocked stands requiring regeneration, when the agent causing the need for salvage, or the salvage operation itself, would create the understocked condition.

f. Trees in overstocked stands when thinning or released will benefit the vigor of the residual stand.

2. Other sales. Ordinarily, collection of salvage sale funds will be limited to salvage sales. Occasionally, however, there may be an identifiable component of a regularly programmed sale which contains a unit of blown-down, insect-infested or other salvage timber. When it is decided to include such salvage opportunities in a regular sale, collections may be deposited to SSF to cover the cost of preparing and administering the salvage component.

In the event timber included in a normal sale area is damaged by fire, insects, windthrow or other agent, salvage sale funds may be collected to cover the cost of preparing and administering the additional salvage volume on the sale.

All deposits to and expenditures from the salvage sale fund must be covered by an approved salvage plan (FSM 2435.23).

<u>2435.1</u> - <u>Authorized Work and Expenses.</u>

1. Sale preparation. Includes the reconnaissance, silvicultural prescriptions, design of logging systems, volume estimates, marking, associated land line location,



83018712

IN THE UNITED STATES CLAIMS COURT

| | | |
|---|---|---|
| MANKE LUMBER, et al., | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 33-85C et al |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEPOSITION OF DAVID E. NOTE

Taken in behalf of Plaintiff

July 9, 1993

* * *

CHANGES HAVE BEEN MADE TO THIS DEPOSITION PLEASE SEE LAST PAGE OF THIS TRANSCRIPT FOR CHANGES

Q. Now, the second component of a reappraisal that we discussed was the bid premium.

Was it your testimony that the District was responsible for doing the calculating on the bid premium as well?

A. They had ultimate responsibility.

Q. All right. And did you participate in that process?

A. Yes.

Q. How did you participate, sir?

A. As I recall, I worked with them in selecting the sales to be analyzed and actually figuring up the bid premium.

Q. Did you have to provide direction to the District as to how to calculate the bid premium, to your recollection, or did they already know how to do that?

A. I don't recall giving them direction, specific direction.

Q. All right. Are you aware of any specific policies or procedures for determining the bid premium?

A. General direction.

Q. What is your understanding of that general direction, sir?

A. That you select sales that are representative of the sale that you're concerned with and use those to

determine what the bid premium was on those sales.
Q. All right.
A. And after analysis, use that bid premium in the calculation of damages.
Q. All right, sir. Now, just so that I understand your answer, is it a goal, then, to find sales which are comparable to the sale that you're concerned with?
A. Yes.
Q. And what factors do you look at to determine whether or not other sales are comparable?
A. Age of the timber, species composition, logability.
Q. By logability, do you mean the type of systems needed to log the sale?
A. Right.
Q. Any other factors?
A. Quality of timber comes in to play. That's about it.
Q. How about length of the sale in terms of the number of years?
A. I don't recall whether that is in the general direction or not.
Q. Is it a factor that you looked at in terms of trying to find comparable sales?
A. I'm sure it was.
Q. How about overall volume?
A. As near as could be determined, yeah.

Q. All right. How about haul distance?
A. I don't recall that being a factor.
Q. All right. Now, do you have any recollection of any of the specifics about any of the four sales identified here on this calculation, handwritten calculation included in Exhibit 1; Polk 4 Salvage, Beech 4 Salvage, Polar 2 or Silver 7?
A. No.
Q. Do you recall anything about any of those sales that made them comparable to Lynx's?
A. No, I don't -- I don't remember the specifics of each sale.
Q. During the time you were a contracting officer on the Gifford Pinchot, were you aware of any sales as large as Lynx's in terms of total volume?
A. I think there were some. I don't remember the names of any sales, but I think there were some.
Q. Were those sales that were under contract during that time or that were actually awarded during your tenure as a contracting officer?
A. They would have been awarded if they existed prior to my being contracting officer.
Q. Do you recall whether or not any of them were larger than Lynx's?
A. No, I don't recall.

C E R T I F I C A T E

I, Kimberly Knight, Shorthand Reporter and Notary Public, do hereby certify that, pursuant to stipulation of counsel hereinbefore set out, DAVID E. NOTE personally appeared before me at the time and place mentioned in the caption herein; that the witness was by me first duly sworn on oath, and examined upon oral interrogatories propounded by counsel; that said examination, together with the testimony of said witness, was taken down by me in stenotype and thereafter reduced to typewriting; and, that the foregoing transcript, Pages 1 to 96, both inclusive, constitutes a full, true and accurate record of said examination of and testimony given by said witness, and of all other proceedings had during the taking of said deposition, and of the whole thereof, to the best of my ability.

Witness my hand at Portland, Oregon, this 19th day of July, 1993.

Kimberly Knight

Kimberly Knight
Shorthand Reporter and
Notary Public
My Commission expires: 4-23-96

DAVID E. NOTE
CORRECTION SHEET

MANKE LUMBER VS. THE UNITED STATES

| PAGE | LINE | CORRECTION |
|---|---|---|
| 9; throughout document | 5 | Roberta Moltzen (not Molt |
| 9 | 15 | ranger (not ranging) |
| 23 | 14 | large sale (not large scale |
| 25 | 8 | reappraisal (not preappraisa |
| 50 | 7 | a weighted (not awaited) |
| 53 | 14 | Detect (not detection) |

I hereby certify that I have read the foregoing transcript, and that this transcription, together with any corrections noted above, is a true and accurate record of my testimony given at the time and place noted.

[signature]
Witness Name

SUBSCRIBED AND SWORN to before me this _____ day of ________________, 199 __.

______________________________
Notary Public for (state) ______________
My commission expires: __________

*-When there is an overriding reason that precludes reoffering the remaining timber, the resale value is the appraised value at expiration, adjusted as appropriate to reflect transaction evidence.

2433.52 - Procedure in Completion of Timber Sale Contract by Sureties. In cases of abandonment, repudiation of contract, or inability or unwillingness of the purchaser to satisfy requirements essential to prevent loss to the United States, the surety on the bond shall be given an opportunity to complete the sale. Sureties should be notified of the status of the sale, and formally requested in writing to complete the contract if they desire. This action shall be taken by the Contracting Officer. If the surety does not wish to carry out the contract, the contract shall be cancelled or action brought for breach of contract, as the circumstances may require.

2433.53 - Resale of Timber. Included timber remaining upon the expiration, abandonment, or cancellation of a sale contract shall be offered for sale promptly unless there is an overriding reason not to do so. Timber included in an abandoned contract should not be reoffered until the evidence of abandonment has been determined by the Regional attorney to be conclusive and surety has declined to complete the contract.

When timber is reoffered after expiration of a contract, there may be restrictions that prohibit the purchaser who failed to complete the original contract from bidding on the resale (36 CFR 223.5, paragraph (h); FSM 2431.6).

2433.54 - Determination of Damages in Uncompleted Timber Sale Contract. When it is necessary to determine whether damages have resulted from the breach of a contract, operations of the purchaser shall be carefully checked with reference to the specific provision involved. -*



83007039

*-Damage to the United States must be appraised with the utmost care and impartiality, and no item shall be included that cannot be supported. Reports should fully discuss each item of damage, the provision of the contract breached, the amount of damage sustained, and the method of appraisal used. Whenever a contract has expired, or has been abandoned or is being considered for cancellation leaving a part of the area uncut, the cost of making a resale of the timber and the cost of reappraisal and readvertisement, should be reported.

Damage appraisals of included merchantable timber shall be made in accordance with standard appraisal practices and instructions in effect at time of sale expiration (FSM 2424.3). For young growth that is damaged or destroyed, values should be determined by following appraisal instructions under FSM 6572.25a.

Cost estimates for completing work on the sale area shall be based upon doing the work to the standard required in the contract.

The following are the more common kinds of damage:

1. Merchantable Timber Cut and Not Paid For. Determine the amount and value by species of (a) designated trees and (b) undesignated trees.

Where the contract provides payment of liquidated damages for the cutting of undesignated timber, determine the amount due and show separately from the stumpage value.

2. Designated Trees Left Uncut. Determine amount and value by species of designated timber left on portions of the sale area that have been logged. Do not include volumes in occasional trees left for reasons permitted by the contract and for which charges would not have been made in the normal course of sale administration.

Damages resulting from the physical presence of uncut trees (as opposed to loss of stumpage) should also be determined and shown separately from stumpage. If provided in the contract, damages may be based on the cost of cutting and removing or otherwise disposing of the uncut trees. -*



83007040

*- 3. Merchantable Material Wasted in Abandoned Logs and in Top and Stumps. Determine amount and value by species. Do not include volumes of (a) incidental material, the leaving of which was justified under existing sale condition, or (b) material authorized to be left.

If the contract does not provide for payment for designated timber cut but not removed, damages shall include the cost of removing or otherwise disposing of wasted material as well as the stumpage value.

4. Parts of Sale Area Left Uncut, Whether Timber Is Marked or Unmarked. Determine amount and value, by species, particularly with reference to any reduction in value due to the acts of the purchaser removing timber of better quality or accessibility than the average for the entire sale area, and in reducing the volume to be cut below that suitable for economical operation.

5. Young Growth and Standing Trees Which Have Been Killed or Seriously Injured. Determine amount and value by species (FSM 6572.25a).

6. Slash, Snags, and Refuse Left on the Sale Area in Violation of the Contract. Determine cost of disposition.

7. Failure to Clean up Camp Area, Sawmill Sites, Landings in Accordance With the Terms of the Contract. Determine cost of disposition.

8. Forest Service Expenditures Necessary Because of Failure of the Purchaser to Require Employees to Prevent or Fight Fires

9. Damage to Improvements Not Repaired. Estimate the cost of the repairs.

10. Unacceptable Damage to Stream and Stream Environment From Excessive Accumulation of Slash and Logging Debris. Determine cost of channel clearing and disposition of debris.

11. Any Other Damage Directly Attributable to a Violation of the Sale Contract -*

83007041

*- 12. Cost of Resale. Report the cost of reselling the timber, including the cost of reappraisal and readvertisement.

13. Failure to Cut. (For sales containing special provision C/CT9.4 (4/82).) In addition to the costs listed in items 1-12, purchasers shall be liable for the following when applicable:

a. Any increase in construction costs for specified roads not completed by termination date. Such roads must be needed to harvest the uncut timber in the resale. Costs are limited to increases for constructing the road to the same standard and specifications that were in the contract on termination date.

b. The Government's loss caused by the delay in receipt of stumpage payments. Interest, at the current rate being paid for borrowing by the United States (as calculated and published by the U.S. Treasury in Treasury Fiscal Requirements Manual 6-8020-20) at termination, shall be charged on the unpaid contract value for half of the contract resale period. Not more than 1 year's additional interest is allowed to cover the time needed by the Forest Service to resell the timber, for example, if the resale contract is a 3 year sale, and does not take place until 18 months after the contract termination date, then interest would be charged for 2 1/2 years (18 months to midpoint, plus the 1 year maximum resale period). Conversely, if the resale takes place 4 months after sale expiration date then interest would be charged for 22 months (4 months plus 18 months to resale midpoint).

c. The loss to the Government caused by delay in harvest measured by increased regeneration costs (including site preparation, seeding, and planting). Such costs must be substantiated by the difference in the regeneration costs in original sale area improvement plan and increased costs caused by the delay in harvest as measured by the regeneration costs in the sale area improvement plan prepared at time of resale. -*

*- Exhibits 1 and 2 show examples of how damages are determined under various circumstances. Note that the situation at termination is the same for all examples in each exhibit.

Exhibit 1

| A. Calculation of Potential Damages | Potential Damages MBF | Potential Damages $ |
|---|---|---|
| 1. Volume and contract value of remaining timber | | |
| a. on area not cut over (item 4) | 1,000 | 25,000 |
| b. on area cut over | | |
| (1) designated | | |
| a) cut, but not removed (item 1) | 200 | 5,000 |
| b) not cut (item 2) | 100 | 2,500 |
| (2) not designated, cut, but not removed (item 1) | 50 | 1,250 |
| (3) material wasted (item 3) | 50 | 1,250 |
| Total remaining timber | 1,400 | 35,000 |
| 2. Liquidated damages (if provided for in the timber sale contract) | | |
| a. on area cut over, designated but not cut (item 2) | | 2,500 |
| b. on area cut over, not designated, cut but not removed (item 1) | | 1,250 |
| 3. Cost of resale (item 12) | | 500 |
| 4. Less effective purchaser credit | | (5,500) |
| 5. Maximum potential damage | | 33,750 |

-*



83007043

*- Exhibit 1 -- Continued

APPRAISED VALUE AT TERMINATION DATE IS:

| | Greater Than Maximum Potential Damage | | Less than Maximum Potential Damages | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Timber is Reoffered for Sale | | | | | | | |
| | | | | | Timber Reoffered Promptly | | | | Reoffered at Later Date | | | |
| | | | Timber Not Reoffered | | Under Original Terms | | Under New Terms | | Market Lower | | Market Higher | |
| | (M) | ($) | (M) | ($) | (M) | ($) | (M) | ($) | (M) | ($) | (M) | ($) |
| B. Calculation of Resale Value | | | | | | | | | | | | |
| (1) Appraised value at termination: | | | | | | | | | | | | |
| a. Original terms | 1,350 1/ | 40,500 2/ | 1,350 1/ | 27,000 2/ | 1,350 1/ | 27,000 2/ | 1,350 1/ | 27,000 2/ | 1,350 1/ | 27,000 2/ | 1,350 1/ | 27,000 2/ |
| b. New terms | -- | -- | | | | | 1,000 | 15,000 | 1,000 | 15,000 | 1,000 | 15,000 |
| (2) Adjustment for Changed Conditions | | -- | -- | -- | | N. A. | | 12,000 | | 12,000 | | 12,000 |
| (3) Resale bid value | -- | -- | -- | -- | | 28,350 | | 16,000 | | 10,000 | | 30,000 |
| (4) Line B (2) + B (3) | -- | -- | -- | -- | | 28,350 | | 28,000 | | 22,000 | | 42,000 |
| (5) Resale value | -- | 40,500 | | 27,000 3/ | | 28,350 | | 28,000 3/ | | 27,000 | | 42,000 |
| C. Calculation of Damages | | | | | | | | | | | | |
| (1) Maximum potential damage (A5) | | 33,750 | | 33,250 | 4/ | 33,750 | | 33,750 | | 33,750 | | 33,750 |
| (2) Resale value (B5) | | 40,500 | | 27,000 | | 28,350 | | 28,000 | | 27,000 | | 42,000 |
| (3) Damages (A5) less (B5) | | None | | 6,250 | | 5,400 | | 5,750 | | 6,750 | | None |
| (4) Unobligated cash on hand | | 1,450 | | 1,450 | | 1,450 | | 1,450 | | 1,450 | | 1,450 |
| (5) Additional due from purchaser | | -- | | 4,800 | | 3,950 | | 4,300 | | 5,300 | | -- |
| (6) Refund due purchaser | | 1,450 | | -- | | -- | | -- | | -- | | 1,450 |

1/ Material wasted, not salable, hence not appraised. Cost of disposing of material included in operating costs.
2/ Includes completion of uncompleted work (FSM 2424.3)
3/ It may be appropriate to add estimated bid premium for unsold volume (FSM 2424.3).
4/ When timber is not reoffered, the total cost of resale (A 3) will not be included in maximum potential damage.

-*

83007044

*- Exhibit 2

Calculation of Damages When C/CT9.4 - Failure to Cut (4/82) Applies

| Contract Conditions | Example 1 MBF | Example 1 Cost or Value | Example 2 MBF | Example 2 Cost or Value |
|---|---|---|---|---|
| 1. Current contract value and uncut volume at termination date | 1,000 | $100,000 | 1,000 | $100,000 |
| 2. Unused effective purchaser credit | - | (10,000) | - | (10,000) |
| 3. Cost of resale (appraisal, adv., and any other prepraration costs) | - | 3,000 | - | 3,000 |
| 4. Increased cost of specified road | - | 6,000 | - | 6,000 |
| 5. Increased regeneration costs | - | 2,000 | - | 2,000 |
| 6. Interest on stumpage payments not made (assume 14.00% rate at term. date, and sale reoffered 90 days after term. date. Resale is for 2 years. Interest will be charged on $90,000 for 15 months.) | - | 15,750 1/ | - | 15,750 1/ |
| 7. Appraised value for resale | 1,000 | 80,000 | 1,000 | 80,000 |
| 8. Actual resale value | 1,000 | 95,000 | 1,000 | 2/ |
| 9. Total amount of damages | | 21,750 3/ | | 36,750 4/ |

1/ Interest charged on $90,000 (Current contract value less unused effective purchaser credit).
2/ Reoffered but no bids received.
3/ Amount by which current contract value, plus all costs, less unused effective purchaser credit, exceeds resale value.
4/ Damages determined by subtracting appraised value from the difference between current contract value and effective purchaser credit, plus all costs.

-*

83007045