IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| GATEWAY LUMBER CO., *et al.*<br>and MANKE LUMBER CO., *et al.*<br>(Mt. Adams Veneer Co.),<br><br>Plaintiffs,<br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Consolidated under lead case<br>No. 589-87C<br>(No. 91-984C)<br>(Judge Bruggink) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**
**IN MT. ADAMS VENEER CO. v. UNITED STATES, NO. 91-984C**

Pursuant to Rule 56(h)(2), Mt. Adams Veneer Co. respectfully submits the following response to the government's requested findings of uncontroverted fact:

1. On August 27, 1979, the Forest Service, United States Department of Agriculture ("Forest Service"), advertised for sale certain timber located in the Gifford Pinchot National Forest in Washington State. The sale was named the "Lynx Sale." Declaration of Christine Anderson ("Anderson Decl.") ¶ 1; D. App. 1.[1]

**RESPONSE: The plaintiff admits the truth of the proposed finding, but objects to the competency of Ms. Anderson to testify to this fact in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay.**

[1] "D. App. __" refers to the cited page(s) in the appendix accompanying our summary judgment motion.

2. On the same date, the Forest Service issued a "Timber Sale Prospectus" for the Lynx Sale, containing information for prospective bidders concerning the timber and the terms and conditions of its sale. D. App. 2-8. As stated in the prospectus, the Sale included fourteen clearcutting units totaling approximately 536 acres, plus 38 acres of right-of-way to be cleared for the construction of specified roads. D. App. 2-3. The total available purchaser road credits equaled $933,641. D. App. 5. According to the volume estimate set forth in the prospectus (and in the timber sale contract), the Sale included an estimated 37,500 MBF[2] of timber, plus an additional volume of pulp and cull material located throughout the 574-acre sale area that was subject to per-acre pricing. D. App. 3,16. The prospectus stated that the contract termination date was to be March 31, 1987. D. App. 4. The lengthy performance period – more than seven years from the anticipated contract award date to the termination date – was due, in part, to the large volume of timber included in the Sale. Anderson Decl. ¶ 2.

**RESPONSE: The plaintiff admits the truth of the first five sentences, but objects to the competency of Ms. Anderson to testify to the facts contained therein in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff denies the last sentence as stated, as no competent evidence has been advanced to establish that the large volume of timber included in the Sale was the reason for its lengthy performance period. The plaintiff submits that the last sentence be revised as follows:**

[2] "MBF" is a unit of measurement meaning "thousand board feet." Thus, 1 MBF equals one thousand board feet of timber.

> **The Sale was originally scheduled to be performed within 90 months, which was a lengthy performance period by the Forest Service's own standards.**

3. The total advertised value of the Lynx Sale, established by a Forest Service appraisal, was $6,575,986.87. Anderson Decl. ¶ 3; D. App. 9.

**RESPONSE: The plaintiff denies the proposed finding as stated and objects to the competency of Ms. Anderson to testify to the facts contained therein in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff submits the following proposed finding:**

> **An appraisal summary prepared by the Forest Service on August 15, 1979, computed advertised rates on the Sale on a per thousand board foot (MBF) basis by species, as follows: $213.85 per MBF for Douglas Fir, $220.35 per MBF for Cedar, $125.80 for Hemlock and Other, and $0.50 for per acre material.**

4. The Forest Service conducted bidding for the Sale on September 27, 1979. Mt. Adams Veneer Company ("Mt. Adams") was the high bidder among twelve with a total bid value of $21,820,375. Anderson Decl. ¶ 4; D. App. 10. Mt. Adams' total bid value was more than three times the advertised value of the Sale.

**RESPONSE: The plaintiff denies that the value of its bid was $21,820,375, and objects to the competency of Ms. Anderson to testify to this fact in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff submits the following proposed finding:**

> **The plaintiff bid, on a per thousand board foot (MBF) basis by species, as follows: $653.10 per MBF for Douglas Fir; $220.35 per MBF for Cedar; $500.00 for Hemlock and Other; and $0.50 for per acre material. The plaintiff agreed to pay those rates, by species, for all timber actually cut and removed.**

5. By letter of October 24, 1979, the Forest Service accepted Mt. Adams' bid and awarded the company the Lynx Timber Sale Contract. D. App. 11-13. Under the terms of the contract, Mt. Adams was obligated to cut, remove, and pay for all of the timber included in the Sale by the contract termination date of March 31, 1987. Anderson Decl. ¶ 5; D. App. 14-17.

**RESPONSE: The plaintiff admits the truth of the first sentence of the proposed finding but objects to the competency of Ms. Anderson to testify to the facts contained therein in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff objects to the second sentence, as competent evidence has not been advanced to establish the stated obligations of Mt. Adams under the contract. Plaintiff further objects on the basis that the second sentence is a Conclusion of Law. The plaintiff proposes that the second sentence be stricken.**

6. On November 18, 1981, the parties executed an "Agreement to Extend Timber Sale Contract" which extended the contract termination date by twenty-seven months, until June 30, 1989. Anderson Decl. ¶ 6; D. App. 18.

**RESPONSE: The plaintiff admits the truth of the proposed finding but objects to the competency of Ms. Anderson to testify to the facts contained therein in any capacity**

**other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay.**

7. During the performance period, Mt. Adams harvested the right-of-way timber completed all of the specified roads and transferred its resulting purchaser credits to other sales, but failed to cut, remove and pay for any of the timber in the fourteen clearcutting units included in the Sale. The contract terminated uncompleted on June 30, 1989. At the time, an estimated volume of 38,300 MBF, including per-acre material, remained in the sale area. Anderson Decl. ¶ 7; D. App. 26.

**RESPONSE: The plaintiff admits the truth of the first and second sentences of the proposed finding but objects to the competency of Ms. Anderson to testify to the facts contained therein in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff objects to the third sentence of the proposed finding, as no competent evidence has been advanced to establish the estimated volume of remaining volume at the time the contract expired. The plaintiff submits that the third sentence be revised as follows:**

> **The Forest Service asserted that after termination there was an estimated remaining volume of 38,300 MBF, including per-acre material, remaining in the sale area. The Forest Service did not verify the accuracy of this volume estimate, and relied upon sixteen-year-old cruise data that had not been certified for accuracy or compliance with Forest Service policies. There is an issue of fact whether the use of this uncertified volume estimate in the government's damage**

**appraisal complied with standard Forest Service methods of appraising damages in place on June 30, 1989.**

8. After the termination of the contract and an environmental analysis of the Sale Area, the Forest Service decided not to resell the remaining timber included in Mt. Adams' defaulted Lynx Sale. The agency's decision was based upon environmental concerns, primarily the potential adverse impacts of further timber harvesting on water quality and soil productivity in the area. The Forest Service's decision not to resell was memorialized in a September 21, 1990 document entitled "ANALYSIS SUMMARY AND DECISION NOT TO RESELL D-LYNX TIMBER SALE." Anderson Decl. ¶ 8; D. App. 19-24. The term "D-LYNX" means defaulted Lynx. Anderson Decl. ¶ 8.

**RESPONSE: The plaintiff objects to this proposed finding in its entirety, and also objects to the competency of Ms. Anderson to testify to the facts contained therein in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. No competent evidence has been advanced to support the allegation that the decision not to resell the remaining timber was made after expiration of the contract. Plaintiff submits the following proposed finding:**

**The Forest Service decided not to resell the remaining timber included in Mt. Adams' defaulted Lynx Sale. The Forest Service announced this decision to Mt. Adams in the contracting officer's letter assessing damages, dated June 22, 1990. The Forest Service's decision not to resell was not memorialized until September 21, 1990 in "ANALYSIS SUMMARY AND DECISION NOT TO RESELL D-**

**LYNX TIMBER SALE." There is a material issue of fact as to when the Forest Service decided not to resell the remaining timber.**

9. Standard Provision B9.4 of the Lynx Timber Sale contract sets forth the methodology for determining the damages, if any, due the United States in the event of a purchaser's default, whether the Forest Service recalls or chooses not to resell the uncut timber. Standard Provision B9.4 provides in pertinent part:

> B9.4 Failure to Cut. In the event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of the Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which the Current Contract Value[,] plus the cost of resale, less any effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. *If there is no resale, damages due shall be determined by subcontracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credits.*

Anderson Decl. ¶ 9; D. App. 25 (emphasis added).

**RESPONSE: The plaintiff admits that the quoted passage is contained in the Lynx Sale contract, and that the contractual provision provides a starting point for calculating damages. However, there are issues of fact as to the meaning of undefined terms such as “standard” and “appraisal.” The plaintiff also objects to the competency of Ms. Anderson to testify to the facts contained in the proposed finding in any capacity other than as a custodian of records, as Ms. Anderson’s Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff further objects on the basis that the remaining portions of the proposed findings are conclusions of law which should be stricken.**

10. Following the termination of Mt. Adams' Lynx contract, the Forest Service appraised the value of the remaining timber as required by Standard Provision B9.4. The appraised value of the remaining volume, as set forth in the "APPRAISAL SUMMARY" (D. App. 26), equaled $10,413,380.96, before an upward adjustment was applied to reflect an estimated bid premium. D. App. 26. The bid premium on a timber sale is the difference between the Forest Service's appraised rates and the actual bid rates, on a per-MBF basis. Anderson Decl. ¶ 10.

**RESPONSE: The plaintiff admits that Forest Service prepared an appraisal following termination of the Lynx sale. The plaintiff also admits that the Forest Service added an amount characterized as an estimated bid premium. The plaintiff objects to the balance of the proposed finding on the basis that there does not exist competent evidence to establish how the appraisal or the overbid was conducted. The plaintiff further objects to the competency of Ms. Anderson to testify to the facts contained in the proposed finding in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff submits the following proposed finding:**

> **The Contracting Officer's decision sets forth a claim for damages including an appraised value and estimated bid premium. A genuine issue of material fact exists as to whether there is competent evidence to establish the amount of damages or whether damages were calculated in accordance with standard Forest Service appraisal methods in use on June 30, 1989.**

11. At the time the appraisal for Mt. Adams' defaulted Lynx Sale was prepared, the Forest Service's practice was to add an estimated bid premium to the appraised rates when the

uncut volume in a defaulted sale was not being resold. This adjustment was made because the Forest Service recognized that the rates established by its appraisal process generally tended to be lower than the actual sales prices in the timber market. The addition of an estimated bid premium to the appraised rates increased the total estimated value of the remaining timber and, thus, reduced the amount of damages which would otherwise be due from the defaulting purchaser under the methodology for determining damages set forth in Standard Provision B9.4. Anderson Decl. ¶11.

**RESPONSE: The plaintiff objects to the competency of Ms. Anderson to testify to the facts contained in the proposed finding in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff further denies the proposed finding as stated, as no competent evidence has been advanced to support the allegations contained therein. The plaintiff submits the following proposed finding:**

> **At the time the Sale expired, the standard Forest Service method of appraising damages when timber was not resold required the Forest Service to add an estimated bid premium to the rates established by the Forest Service's ordinary pre-sale appraisal rates. These bid premiums were required to be computed using data from comparable sales. In addition, the standard Forest Service method also required adjustments to be made to account for all significant differences between the Lynx Sale and the comparable sales. There are material issues of fact whether the Forest Service complied with these standard Forest Service methods.**

12. In determining the value of the remaining timber included in Mt. Adams' defaulted Lynx Sale, the contracting officer, in consultation with district sale administration personnel, reviewed other timber sales within the Randle Ranger District of the Gifford Pinchot National Forest (i.e., the same Ranger District in which the Lynx Timber Sale was located). Using price data from four such sales, the contracting officer calculated weighted average bid premiums to be added to the appraised rates per MBF for two species or categories of timber included in Mt. Adams' defaulted Lynx Sale: Douglas Fir ("DF"); and Hemlock and Other Coniferous Species ("H&O"). The DF and H&O represented over 90 percent of the estimated volume of uncut timber on the Lynx Sale. D. App. 26. The weighted average big premium for DF equaled $215.27 per MBF, and the weighed average bid premium for H&O equaled $173.71 per MBF. Anderson Decl. ¶ 12; D. App. 30-31. No estimated bid premiums were added to the appraised rates for the Western Red Cedar and the per-acre material because they were fixed-rate species and were not subject to bidding above the appraised rates. Anderson Decl. ¶ 12.

**RESPONSE: The plaintiff objects to the competency of Ms. Anderson to testify to the facts contained in the proposed finding in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff further objects to this proposed finding in its entirety, as there is no competent evidence to establish how the contracting officer calculated the estimated overbid without resort to hearsay or speculation. The plaintiff submits the following proposed finding:**

> **The Contracting Officer's decision assessing damages against the plaintiff included an adjustment for an estimated bid premium. A genuine issue of material fact exists as to how that adjustment was**

**made and whether it was made in a manner that was consistent in all material respects with standard Forest Service methods of appraising damages.**

13. Adding these weighted average bid premiums to the appraised rates set forth in the appraisal summary (D. App. 26), the contracting officer determined the value of the remaining timber on the Lynx Sale at the time of termination as follows:

| Species | Volume | Appraised Rates | Bid Premium | New Rate | Total |
|---|---|---|---|---|---|
| DF | 19,100 | $426.35 | $215.27 | $641.62 | $12,254,942 |
| H&O | 15,800 | $121.16 | $173.71 | $294.87 | 4,658,946 |
| C[3] | 1,400 | $171.12 | -- | $171.12 | 239,568 |
| PAM[4] | 2,000 | $ 58.10 | -- | $ 58.10 | 116,200 |
| | | | | | $17,269,656 |

Anderson Decl. ¶ 13; D. App. 32.

**RESPONSE: The plaintiff objects to the competency of Ms. Anderson to testify to the facts contained in the proposed finding in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff further objects to this proposed finding in its entirety, as there is no competent evidence to establish how the contracting officer calculated the estimated overbid without resort to hearsay or speculation. The plaintiff submits the following proposed finding:**

[3] "C" refers to the Western Red Cedar included in the Sale.

[4] "PAM" refers to per-acre material.

> **The Contracting Officer's decision assessing damages against the plaintiff included an adjustment for an estimated bid premium. A genuine issue of material fact exists as to how that adjustment was made and whether it was made in a manner that was consistent in all material respects with standard Forest Service methods of appraising damages.**

14. This appraisal of the value of the remaining timber in Mt. Adams' defaulted Lynx Sale, including the determination and addition of the weighted average bid premiums, was performed in accordance with the standard Forest Service method in use at the time. Anderson Decl. ¶ 14.

**RESPONSE: The plaintiff objects to the competency of Ms. Anderson to testify to the facts contained in the proposed finding in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff further objects to this proposed finding in its entirety, as there is no competent evidence to establish how the appraisal was performed or how the contracting officer calculated the estimated overbid without resort to hearsay or speculation. The plaintiff submits the following proposed finding:**

> **The Contracting Officer's decision assessing damages against the plaintiff stated it was based on an appraisal and included an adjustment for an estimated bid premium. A genuine issue of material fact exists as to how the appraisal was conducted, how the adjustment was made, and whether these things were done in a manner that was**

**consistent in all material respects with standard Forest Service methods of appraising damages.**

15. To determine whether damages were due the United States under Standard Provision B9.4, the contracting officer also calculated the Current Contract Value[5] of the remaining timber, that is, the value of the remaining volume of timber at the rates Mt. Adams' was obligated to pay under the terms of its contract. The contracting officer calculated the Current Contract Value as follows:

| Species | Volume | Contract Rates | Total |
|---|---|---|---|
| DF | 19,100 | $678.00 | $12,949,800 |
| H&O | 15,800 | $500.00 | 7,900,000 |
| C | 1,400 | $220.35 | 308,490 |
| PAM | 536 acres | $1.83 | 981 |
| | | | $21,159,271 |

Anderson Decl. ¶ 15; D. App. 32.

**RESPONSE: The plaintiff objects to the competency of Ms. Anderson to testify to the facts contained in the proposed finding in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff further objects to this proposed finding in its entirety, as there is no competent evidence to establish how the contracting officer calculated damages without simply relying upon the Contracting Officer's decision, which is not competent evidence, or by resort to hearsay or speculation.**

16. Thus, under the damages formula set forth in Standard Provision B9.4, the damages due the United States are as follows:

| | |
|---|---|
| Current Contract Value: | $21,159,271.00 |
| Less Purchaser Credit: | 0.00 |
| Subtotal: | 21,159,271.00 |
| Less Appraised Value: | - 17,269,656.00 |
| Damages: | 3,889,615.00 |
| Less Case Deposit: | - 100,000.00 |
| Net Due: | $ 3,789,615.00 |

Anderson Decl. ¶ 16.

**RESPONSE: The plaintiff objects to the competency of Ms. Anderson to testify to the facts contained in the proposed finding in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff further objects to this proposed finding in its entirety, as there is no competent evidence to establish how the contracting officer calculated damages without simply relying upon the Contracting Officer's decision, which is not competent evidence, or by resort to hearsay or speculation.**

17. Accordingly, on June 22, 1990, the contracting officer issued, and sent to Mt. Adams by certified mail, his final decision assessing the damages against Mt. Adams in the amount of $3,789,615. D. App. 27-29. The contracting officer enclosed, with his decision letter, his bid premium calculations (D. App. 30-31), damage calculations (D. App. 32), and a bill for collection. D. App. 33. Payment in the amount of $3,789,615 was due by July 22, 1990. D. App. 33. The contracting officer's determination of the damages due the United States is correct and in accordance with Standard Provision B9.4 of the Lynx Timber Sale Contract. Anderson Decl. 17.

[5] "Current Contract Value" is the sum of the products of the current contract rates and the estimated remaining timber volumes by species. The contract rates at the time the Lynx Sale expired uncompleted were Mt. Adams' bid rates. See D. App. 17 (Contract, section A5b).

**RESPONSE: The plaintiff objects to the competency of Ms. Anderson to testify to the facts contained in the proposed finding in any capacity other than as a custodian of records, as Ms. Anderson's Declaration lacks foundation and is based upon speculation and hearsay. The plaintiff further objects to this proposed finding in its entirety, as there is no competent evidence to establish how the contracting officer calculated damages without simply relying upon the Contracting Officer's decision, which is not competent evidence, or by resort to hearsay or speculation.**

18. Thereafter, on March 5, 1991, Mt. Adams commenced this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., challenging the contracting officer's final decision.

**RESPONSE: Admitted.**

Respectfully submitted this 22nd day of January, 2004.

s/ Steven A. Miller for
Dennis J. Dunphy
SCHWABE, WILLIAMSON & WYATT, PC
1420 Fifth Avenue, Suite 3010
Seattle, WA 98101
Phone: (206) 622-1711
Fax: (206) 292-0460

Of Counsel:

Steven A. Miller
SCHWABE, WILLIAMSON & WYATT
1420 Fifth Avenue
Suite 3010
Seattle, WA 98101-2393
Phone: (206) 622-1711
Fax: (206) 292-0460

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 22nd day of January, 2004, I caused copies of the foregoing PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN MT. ADAMS VENEER CO. v. THE UNITED STATES, NO. 91-984C, to be served upon the following individual electronically and a courtesy copy was sent by Federal Express.

Richard P. Nockett
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L St., N.W. (8th Floor)
Washington, D.C. 20530

s/ Steven A. Miller