IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MANKE LUMBER CO., et al. (MT. ADAMS VENEER CO.), | ) | |
| Plaintiffs, | ) | Consolidated under lead case No. 33-85C (No. 91-984C) (Judge Bruggink) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

JOINT STIPULATIONS OF FACT
IN MT. ADAMS VENEER CO. v. UNITED STATES, NO. 91-984C

Pursuant to Appendix A, ¶¶ 13(c)(4) and 17, of the Rules of the United States Court of Federal Claims, and this Court's Order of October 5, 2004, the parties respectfully submit the following joint stipulations of fact for the trial in Mt. Adams Veneer Co. v. United States, No. 91-984C.

1. On August 27, 1979, the Forest Service advertised for sale the Lynx Timber Sale and issued a prospectus containing information for prospective bidders concerning the timber included in the Sale and the terms and conditions of its sale. The Lynx Sale included an estimated 37,500 MBF[1] of timber located in the Randle Ranger District of the Gifford Pinchot National Forest on the westside of the Cascade Mountain Range in Washington State. The prospectus indicated that additional documents were available to prospective bidders containing information about the Sale; these included a sample contract, the Forest Service appraisal and

[1] "MBF" is a unit of measurement meaning "thousand board feet." Thus, 1 MBF equals one thousand board feet of timber.

cruise information, a sale area map, and plans and specifications for the construction and reconstruction of specified roads. Bidding was to be conducted on September 27, 1979. See Jt. Ex. 1[2] (Sale Advertisement) and Jt. Ex. 2 (Prospectus).

2. As stated in the prospectus, the Sale comprised 14 clearcutting harvest units totaling 536 acres, plus 38 acres of right-of-way to be cleared for the specified road construction. The prospectus indicated that the Lynx Sale required the construction of approximately 6.1 miles of specified roads, the reconstruction of approximately 5.3 miles of specified roads, and allowed purchaser road credits in the amount of $933,641. The normal operating season was to be between May 15 and November 15. The contract termination date was to be March 31, 1987. Jt. Ex. 2 (Prospectus).

3. According to the prospectus, the total estimated volume of merchantable timber included in the Sale included the following species and estimated volumes:

| Species | Estimated Volume (MBF) |
|---|---|
| Douglas fir ("DF") | 19,600 |
| Western red cedar ("C") | 1,500 |
| Hemlock and other species ("H&O) | 16,400 |
| Total: | 37,500 MBF |

See Jt. Ex. 2 (Prospectus). In addition to the estimated 37,500 MBF of merchantable timber, the Sale included an estimated 2,100 MBF of utility pulp and cull material located throughout the 574 acres of the Sale area to be harvested. The pulp and cull is referred to as "per-acre material" or "PAM." See Jt. Ex. 2 (Prospectus) and Jt. Ex. 3 (Appraisal Summary dated August 15, 1979).

[2] "Jt. Ex. ___" refers to the cited exhibit on the parties' Joint Exhibit List.

4. The advertised rates per MBF,[3] established by the Forest Service appraisal, for the three species of merchantable timber included in the Sale were:

| Species | Advertised Rate |
| --- | --- |
| DF | $213.85 |
| C | $220.35 |
| H&O | $125.18 |

The advertised rate for the Western red cedar ("C") was not biddable. Rather, it was to be sold and paid for at a fixed rate of $220.35 per MBF. The PAM included in the Sale was also not biddable. It was subject to per-acre pricing and was to be sold and paid for at the fixed rate of $1.83 per acre. See Jt. Ex. 1 (Sale Advertisement); Jt. Ex. 2 (Prospectus). The total advertised value[4] for the Lynx Sale was $6,575,986.87. See Jt. Ex. 3 (Appraisal Summary).

5. The Forest Service conducted bidding for the Sale on September 27, 1979. Mt. Adams Veneer Company ("Mt. Adams") was the high bidder among twelve. Mt. Adams' bid

[3] The advertised rates for the original Lynx Sale were the minimum acceptable bid rates for the various species of timber included in the Sale, exclusive of required deposits for slash disposal and road maintenance. Advertised rates are equal to the higher of the "appraised rates" or "base rates." Appraised rates represent the estimated fair market value of the timber using the Forest Service's residual value appraisal method. Base rates are the lowest rates of payment which the Forest Service is authorized to accept. The advertised rates for the Lynx Sale were the appraised rates.

[4] Total advertised value is obtained by multiplying the advertised rate per MBF for each species by the estimated volume of each species, and adding the figures thus derived. In other words, total advertised value is the sum of the products of the advertised rates multiplied by the estimated volume (in MBF) for each species.

rates[5] for each species were as follows:

| Species | Unit of Measure | Advertised Rate | Bid Rate |
|---|---|---|---|
| DF | MBF | $213.85 | $678.00 |
| C | MBF | $220.35 | $220.35 |
| H&O | MBF | $125.18 | $500.00 |
| PAM | Acre | $1.83 | $1.83 |

See Jt. Ex. 4 (Bid form dated September 27, 1979, signed by Mt. Adams' general manager, Dean Hackett).[6] The total value of Mt. Adams' bid was $21,820,375. Jt. Ex. 5 (Report of Timber Sale, dated September 27, 1979).

6. By letter dated October 24, 1979, the Forest Service accepted Mt. Adams' bid and awarded the company the Lynx Timber Sale Contract. Jt. Ex. 6 (award letter). Under the terms of the contract, Mt. Adams was obligated, among other things, to cut, remove, and pay for at contract rates all of the timber included in the Sale by the contract termination date of March 31, 1987. Jt. Ex. 7 (Lynx Contract).

7. The parties later executed, on November 18, 1981, an "Agreement to Extend Timber Sale Contract" which extended the contract termination by twenty-seven months, until June 30, 1989. Jt. Ex. 8 (extension agreement).

---

[5] "Bid rates," as defined in the timber sale contract, "are the rates bid by [the] Purchaser (exclusive of Required Deposits for slash disposal and road maintenance) and are the sum of Advertised Rates and Bid Premium Rates." Jt. Ex. 7 (Lynx Contract, § A5b). "Bid Premium Rates" are defined as "the amounts by which [the] Purchaser's bid is in excess of Advertised Rates." Id.

[6] As stated previously, and as indicated on the bid form, the Western red cedar ("C") and PAM were offered at fixed rates and were not biddable (i.e., the Forest Service would consider no different rate).

8. The Lynx Contract included a provision entitled "Scheduled Rate Redetermination" which states:

> Date for scheduled rate redetermination is July 1, 1985. Rate redeterminations shall cover Included Timber in the entire sale unless otherwise specified in C3.31. Timber volume required to be cut and scaled before lower rates developed from scheduled rate redetermination can become effective is 21,100 M board feet.

Jt. Ex. 7 (Lynx Contract, ¶ A7).

9. The Lynx contract terminated uncompleted on June 30, 1989. During the performance period, Mt. Adams harvested most of the right-of-way timber, completed all of the specified roads and transferred its resulting purchaser credits to other sales, but failed to cut, remove, and pay for any of the timber in the fourteen clearcutting units included in the Sale.

10. Standard Provision B9.4 of the Lynx contract provides in pertinent part:

> B9.4 Failure to Cut. In [the] event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at the time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which Current Contract Value[,] plus the cost of resale, less any effective Purchaser Credit remaining at time of terminations, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.

Jt. Ex. 7 (Lynx Contract, ¶ B9.4).

11. In September 1989, the Forest Service performed a rate redetermination appraisal for purposes of section A7 of the Lynx Contract. See Jt. Ex. 9 (Appraisal Summary, dated

September 27, 1989). In April 1990, the Forest Service performed a damage appraisal that used third quarter 1989 data for the base period. See Jt. Ex. 10 (Appraisal Summary, dated April 24, 1990. In June 1990, the Forest Service performed a damage appraisal that used first quarter 1989 data for the base period. See Jt. Ex. 11 (Appraisal Summary, dated June 1, 1990). There were other appraisals completed before April 1990.

12. In determining the appraised value at termination, the Forest Service used the appraisal summary dated June 1, 1990, that used first quarter 1989 data for the base period. Jt. Ex. 11 (Appraisal Summary, dated June 1, 1990). According to the June 1, 1990 appraisal, an estimated volume of 38,300 MBF, including PAM, remained in the sale area. The total estimated volume remaining included the following species and estimated volumes:

| Species | | Estimated Volume (MBF) |
|---|---|---|
| DF | | 19,100 |
| C | | 1,400 |
| H&O | | 15,800 |
| PAM | | 2,000 |
| | Total: | 38,300 MBF |

Jt. Ex. 11. The rates per MBF established by the appraisal were:

| Species | Appraised Rate |
|---|---|
| DF | $426.35 |
| C | $171.12 |
| H&O | $121.16 |
| PAM | $58.10 |

According to the appraisal, the total value of the remaining timber was estimated to be $10,413,380.96. Jt. Ex. 11.

13. The Forest Service decided not to resell the remaining timber included in Mt. Adams' defaulted Lynx Sale.

14. After Mt. Adams' Lynx Contract expired uncompleted, the Forest Service did not re-cruise the remaining timber.

15. On June 22, 1990, the contracting officer issued a final decision assessing damages against Mt. Adams. Damages were calculated as follows:

| | |
|---|---|
| Current Contract Value of Remaining Volume at Termination: | $21,159,271 |
| Less Cash on Deposit: | 100,000 |
| Less Appraised Value at Termination: | 17,269,656 |
| Damages Due: | $3,789,615 |

Respectfully submitted,

s/Dennis J. Dunphy
DENNIS J. DUNPHY
Schwabe, Williamson & Wyatt, P.C.
1420 Fifth Avenue, Suite 3010
Seattle, Washington 98101-2393
Tele: (206) 622-1711
Fax: (206) 292-0460

Attorney for Plaintiff
Mt. Adams Veneer

Dated: 1/14/05

PETER D. KEISLER
Assistant Attorney General

J. CHRISTOPHER KOHN
Director

s/John W. Showalter
JOHN W. SHOWALTER
Assistant Director

s/Richard P. Nockett
RICHARD P. NOCKETT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W. (8th Floor)
Washington, D.C. 20530
Tele: (202) 307-1134
Fax: (202) 307-0494

Attorneys for Defendant

Dated: January 14, 2005

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 14th day of January 2005 I caused copies of the foregoing "JOINT STIPULATIONS OF FACT IN MT. ADAMS VENEER CO. v. UNITED STATES, No. 91-984C" to be served upon the following individual by Federal Express and also by facsimile.

DENNIS J. DUNPHY, Esq.
Schwabe, Williamson & Wyatt
1420 Fifth Avenue, Suite 3010
Seattle, Washington 98101

s/Tewana Strong